## LORE v. AMERICAN MANUFACTURING COMPANY, Appellant.

### Division Two, March 12, 1901.

1. **Mill-Guards: FAILURE TO PROVIDE: NEGLIGENCE.** A failure to provide guards or fences for the gearing and cog-wheels of spinning machines in a jute manufactory, according to the requirements of the statute, is negligence.

2. ———: ———: ———: STATUTORY CASE. Spinning machines for the manufacture of jute bagging were placed not more than thirty inches apart on a floor made very slippery and difficult to walk upon because of oil dropped thereon from the machines and scattered by the loose jute. Plaintiff for three days had worked at the front of the machine, and her assistant "end-minder" at the rear. Among her duties was to "fix up" the threads when they broke, and thus prevent the stopping of the machine. If more threads broke at the rear than the "end-minder" could readily fix up, it was her duty to go immediately to her assistance, along the aisles between the machines, thus passing the corner of the machine where the gearing and cog-wheels were. These were recognized as dangerous by the company which made the machine, in that it sent along with them guards, or wire drums, and also by the manufacturing company, for it had supplemented the guards with sheet iron inside, but which, on the machine which injured plaintiff, did not extend around to an opening in the cage, made by the girls, in rounding the corner, supporting themselves by catching at the iron upright rods that formed the guards. These rods were ordinarily an inch and a half apart, but at the time of the accident were three or four inches, and had been that way for two months, possibly two years. As the thread on the spools ran low, the breaking rapidly increased in the rear, and then plaintiff started back to assist the "end-minder," and in turning the corner she slipped and fell, and her arm was thrust through the opening in the guard, drawn between the cog-wheels and crushed. *Held*, that the facts of the case bring it clearly within the provisions of the statute requiring "the belting, shafting, gearing and drums, in all manufacturing establishments. . . . . . . , when so placed as to be dangerous to persons employed therein or thereabout,

Lore v. American Mfg. Co.

while engaged in their ordinary duties," to be "safely and securely guarded, when possible."

3. ——: ——: ——: ——: CONSTITUTIONAL. Such statute is constitutional, and is to be considered as belonging to the class of statutes providing for fire escapes, inspection of boilers, ventilation of mines, etc.

4. ——: ——: ——: VOLUNTEER. The action of plaintiff in going to the rear to assist the "end-minder" in fixing up the ends of the broken threads, under the circumstances of this case, did not make her a volunteer.

5. ——: ——: ——: CAUTION AND FORESIGHT. Defendant complains that no human foresight could have seen that an employee's hand would have been thrust through the opening in the guard. The evidence showed that the guard was just at a corner of the machine around which the employees were compelled constantly to pass in keeping the threads intact; that the opening had been there for two months, possibly two years, and was large enough to permit the passing of a volume of the Revised Statutes through it; that former employees had often slipped at the corner, and had caught the rods of the cage to keep from falling on the oily floor, and thus the opening was made; and that the foreman was constantly in the room. *Held*, that, the instructions being proper, the defendant must be held to be concluded on this point by the finding of the jury that the evidence was sufficient to show negligence on the part of the company.

6. ——: STATUTORY MEASURE OF CARE. Where the statute requires machinery in a manufacturing establishment to be made "safe and secure" for employees, the courts will not establish a less measure of diligence and care.

7. ——: FELLOW SERVANTS. There was no evidence in this case on which to predicate an instruction that the injury was due to the negligence of a fellow servant. A spinner is not chargeable with the action of former employees who bent the rods in the guards of the machine which caused the injury to her. nor is she so chargeable if the rods were bent before she was employed, and there is no evidence that those who bent them were in the employ of the company at the time of the injury.

8. ——: COMBINATION OF CAUSES: ASSUMPTION OF RISK. Where the injury is caused by defendant's negligence conspiring with an accidental cause, namely, the slipping of plaintiff on the oily floor, of

Vol 160 mo—39

whose condition she well knew, and her falling into a cog-wheel of the machine at which she was employed to work, through an opening in the guard which the defendant had negligently failed to repair, it will not be held that she assumed the risk of falling on the slippery floor; the facts showing that she would not have been injured by falling had it not been for defendant's negligence in failing to provide a guard.

9. ————: SAFETY OF EMPLOYEES. An instruction which requires a less degree of care, of a manufacturer than the statute imposes on him, should not be given.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Kerr & Tittman* for appellant.

(1) The peremptory instruction to find for the defendant, asked at the close of the whole case, brings up the entire evidence for review. Hilz v. Railroad, 101 Mo. 36; Hite v. Railroad, 130 Mo. 132. (2) The condition of the floor was incident to appellant's business. Respondent assumed all risks of her work arising out of the condition of the floor. Jackson v. Railroad, 104 Mo. 448; Luce v. Oil Co., 129 Mo. 32; Nugent v. Milling Co., 131 Mo. 241. (3) The condition both of the guard and of the floor was continuous and obvious, and if either involved danger respondent assumed the risk of it. Fugler v. Bothe, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo. 541; Helfensteller v. Medart, 136 Mo. 619; Plefka v. Knapp-Stout Co., 145 Mo. 316. (4) The condition of the floor and respondent's fall in consequence of it, was the proximate cause of her injuries. The opening in the guard was a condition merely, or at best, the remote cause, and gives respondent no cause of action. The law always refers the injury to the proximate and not to the remote cause. Shear-

man & Redfield on Negligence, sec. 9; Henry v. Railroad, 76 Mo. 288; Stepp v. Railroad, 85 Mo. 229; Stanley v. Railroad, 114 Mo. 606. (5) Respondent's fellow servants bent the rods in the guard. She can not recover from the master for an injury due to the misconduct of her fellow servants. McDermott v. Railroad, 30 Mo. 115; McGowan v. Railroad, 61 Mo. 528; Parker v. Railroad, 109 Mo. 362; Card v. Eddy, 129 Mo. 510. (6) Respondent is guilty of contributory negligence and the court below erred in refusing to instruct on that subject. (7) The case is one of inevitable accident, and appellant's instruction on that subject should have been given. (8) The court erred in its construction of section 3 of the Act of April 20, 1891. Laws 1891, p. 159, now sec. 6433, R. S. 1889.

*Martin & Bass* and *T. Percy Carr* for respondent.

(1) Defendant was guilty of negligence *per se* in failing to safely and securely guard its gearing, as provided by statute. Laws 1891, p. 159, now sec. 6433, R. S. 1899; Colliott v. American Manufacturing Company, 71 Mo. App. 163; Caswell v. Worth, 5 El. & Bl. 849; Messenger v. Pate, 42 Iowa 443. (2) Defendant is liable, the injury to plaintiff having been caused by defendant's negligence conspiring with an accidental cause. Musick v. Packing Company, 58 Mo. App. 322; Bassett v. St. Joseph, 53 Mo. 290; Yocum v. Town of Trenton, 20 Mo. App. 489; Hull v. City of Kansas, 54 Mo. 598; Brennan v. St. Louis, 92 Mo. 482; Brinck v. Railroad, 17 Mo. App. 177; Waller v. Railroad, 59 Mo. App. 410.

GANTT, J.—This is a civil action for damages to plaintiff, an employee in a jute factory owned and operated by defendant, on the twenty-fourth of November, 1894, alleged to have been caused by the negligence of defendant in failing to safely guard its gearing on a machine used for spinning jute in

the manufacture of bagging, as required by an act of the General Assembly, approved April 20, 1891, and in permitting the guard to said gearing to become and remain out of repair, whereby plaintiff's right hand and forearm were, without fault on her part, thrown through said guard and into the cog-wheels and gearing of said machine and were torn, lacerated and crushed.

The answer was a general denial and a plea of contributory negligence.

There was a verdict and judgment for plaintiff for $2,750, from which defendant appeals.

The facts appear to be that at the time of the accident plaintiff was a girl about sixteen years old. She brought the action soon after she reached her majority. The cause was tried in 1896, before a special jury, and she was awarded $2,000. Defendant appealed to the St. Louis Court of Appeals and that court for error in the instructions reversed and remanded the cause. The case is reported as Colliott v. American Mfg. Co., 71 Mo. App. 163. Since then plaintiff has married and her present name is Rose Lore.

There is little if any conflict in the evidence. Plaintiff was employed at the time of the accident as spinner in the defendant's factory or bagging mill, known as the Southern Mills, in the city of St. Louis. The machine by which she was injured is a large machine some nineteen feet in length and about four feet wide, and is known as a spinning machine. It is operated by two girls, the spinner, who is ordinarily in front, and the "end-minder," whose ordinary position is in the rear; but it is the duty of both girls to keep the machine running, and to pass around the frame to help one another whenever necessary. The material used is what is commercially known as jute butts, which is manufactured into bagging for covering bales of cotton. In the rear of the machine are forty-

eight cans filled with this material in the form of long strings called sliver, which are carried through the machine from the rear to the front in the process of spinning.

This sliver is loose and flimsy and easily parted, and it is the business of the two girls to watch and "fix up" the ends whenever they break down, that is to say, whenever one of the strings of sliver happens to break there is what is known as an "end" which has to be fixed up by the operators. Ordinarily it is the duty of the spinner to fix up the ends in the front, and of the "end-minder" in the rear, but it frequently happens that a number of ends break down at once in the rear of the machine, and it is necessary on these occasions, in order to keep the machine running, for the spinner to pass around to the rear and help the "end-minder" put them up. In behalf of plaintiff at the trial was produced the testimony of plaintiff herself, and five other employees of the factory, spinners and "end-minders," all of whom testified that it was the duty of the spinners and "end-minders" to help one another in their work whenever it was necessary in order to keep the machine running, and to pass around the machine whenever necessary for that purpose.

The floor of the factory is conceded to have been very slippery, so much so as to be very hard to walk upon, and persons walking were liable to slip and fall at any moment. The jute material was prepared for spinning with an oil which was rubbed into the floor by the constant sweeping of the waste jute over the floor, and also a considerable quantity of the oil used for lubricating the machinery was thrown off upon the floor and rubbed in in the same manner.

The driving machinery or gearing of the machine was located at one end, being the end opposite to plaintiff's ordinary position in operating the machine, and was located on a narrow passage between plaintiff's machine and the next ma-

chine in the same row. This passage was only about two feet wide, or barely wide enough to allow the girls to pass through in the discharge of their ordinary duties; *and in order to protect the employees passing through this narrow aisle from the cog-wheels at the end of plaintiff's machine, there was placed in front of and around this gearing a guard, consisting of vertical iron rods about three-eighths of an inch in thickness, fixed above and below to iron bars or crosspieces.* These rods or guard-wires in front of the gearing were located about an inch and one-half apart, and were made of soft iron, round, and about three feet in length; *but prior to the accident to plaintiff, several of these rods or wires had become bent, so as to produce a considerable opening just at the corner of the machine, which was large enough to allow the hand of any ordinary person who might fall on the slippery floor, to pass through so as to come into contact with the dangerous cog-wheels or gearing of the machine.* Several of plaintiff's witnesses testified that the opening was large enough to allow the first volume of the *Revised Statutes of Missouri of* 1889 *to be passed through in the direction of its thickness.* According to all the witnesses, the opening which existed beforehand was several inches wide, and large enough to allow plaintiff's hand to easily pass through. The opening was probably produced by the employees who had been working on the machine in previous years taking hold of the wires in order to hold themselves up and keep themselves from falling upon the slippery floor in going around the machine, and there is some testimony going to show that this has been the custom of some of the girls in the factory. That this custom is probably the cause of the opening is indicated by the fact that the opening was located just at the corner, which was the place where the employees were in the habit of taking hold of the wires in passing around the machine. Owing to the greasy

floor there was danger of slipping and consequently of falling, just at the corner, and at the place where this opening in the guard was located.

At the time of the accident, plaintiff had been working on the machine for less than three days, having been put to work on this machine on Thursday and the accident occurring on Saturday afternoon. Her ordinary position in tending the machine was at the opposite end from the defective guard, and she did not notice or see the opening until the same day when she was hurt.

Immediately prior to the accident plaintiff and her "end-minder" began to run out of material, and the ends were rapidly breaking in the rear of the machine, and it became necessary for plaintiff to go around to the rear to help the "end-minder" put up the ends in order to keep the machine running. That this was the duty of the plaintiff under the circumstances is unanimously testified to by all the girls who work at the factory who were sworn at the trial, being six in number, who state that such was the universal custom amongst all the girls in the factory, and that they were scolded by the foreman when they neglected to do so. In order to induce the girls to help one another to keep the machine running, they were put upon piece work, or paid according to the amount of work which was turned out by their machine, thereby making it to their interest to help one another at all times.

The evidence very clearly establishes that in going from her end to help the "end-minder," plaintiff was in the discharge of her ordinary duties. In passing around the corner of the machine she slipped and fell and her arm was thrust through the unguarded opening and was caught in the cogs and was drawn through up to her elbow. The evidence shows her hand and arm were terribly mangled and lacerated. If she is entitled to recover at all, no doubt can exist that the verdict was a very moderate compensation for her injuries.

The various witnesses testified that the opening in the guard had existed from two months to two years, according to the time they had worked in that vicinity. It was shown that the foreman, Mr. Comerford, was constantly in the room. Indeed he testified that he saw the opening after she was hurt. It appears that the guard comes with the machine from the factory, but not deeming it sufficient, Mr. O'Boyle caused a piece of sheet iron to be placed inside of the guard and between the cog-wheels and the guard, but it did not extend east far enough to protect the corner.

At the close of all the evidence the defendant demurred to the evidence, which the court overruled.

The court thereupon instructed the jury as follows:

"1.    The laws of this State require the belting, gearing and drums in all manufacturing, mechanical and other establishments, when so placed as to be dangerous to persons employed therein or thereabout, while engaged in their ordinary duties, to be safely and securely guarded, whenever they are so situated as to admit of guards being placed about them, without interfering with their free operations, or with necessary access to them, or necessary passageway by or around them. The guards required are safe and secure ones, such guards as will protect the employees from contact with the machinery, by the use of ordinary prudence and caution on their part. This duty, imposed upon the master or employer, does not make the master or employer an insurer of the safety of the servant or employee. The guards which the master is required to provide are such as will protect the employee, using ordinary care, against all dangers that can be foreseen by ordinary human foresight; but the master is not required to guard against the negligence of the employee, nor against such dangers or accidents as no human knowledge or experience could anticipate. The failure of the master to so guard the

gearing, belting and drums of his machinery so situated, is negligence, because it is a violation of a duty imposed by the statute on that subject.

"Now, in this case, if you find and believe from the evidence that the plaintiff, at the time of the injury complained of, was in the employ of the defendant company in its bagging factory, and that she was engaged at the time in tending a spinning frame or machine, and that said spinning frame or machine was operated by means of belting, drums and cog-wheels and if you further believe from the evidence that such belting, drums and cog-wheels of said spinning frame or machine were so situated or placed as to be dangerous to persons employed about the same while engaged in the performance of their ordinary duties; and if you further believe from the evidence that such spinning frame or machine and the belting, drums and cog-wheels thereof were, at the time, so situated as to admit of guards being placed about such belting, drums, and cog-wheels, without interfering with their free operation, or with necessary access to them, or necessary passageway by or around them; and if you further find from the evidence that prior to the time of the injury complained of the defendant had placed a guard about the gearing and cog-wheels of said spinning frame or machine; and if you further believe from the evidence that at the time of the injury complained of, and prior thereto, two or more of the iron vertical bars forming part of such guard had been, and then were, so bent as to produce an opening in said guard large enough to allow the hand of an ordinary person to pass through and come in contact with said gearing or cog-wheels, and that by reason of this the guard in question was not then and there a safe and secure guard, and such as would protect an employee, while engaged in her ordinary duties with or around said spinning frame or machine, and

while exercising ordinary care, against all dangers that could be foreseen or anticipated by ordinary human foresight; and if you further find from the evidence that the plaintiff was, at the time of the injury complained of, engaged in the performance of her ordinary duties, and was exercising such care as a person of ordinary prudence and of her age and experience would have exercised under similar circumstances, and that while so engaged she slipped and fell by reason of the slippery condition of the floor, and that by reason of the unsafe or insecure condition of the guard around said cog-wheels and gearing of said machine (if you find from the evidence that it was unsafe and insecure) her hand and forearm while so falling passed through such opening and thereby came in contact with said gearing, and that plaintiff was injured thereby, then your verdict should be for the plaintiff.

"2. The court instructs the jury that if they shall find from the evidence the facts to be as stated in the foregoing instruction, it is not necessary, to entitle plaintiff to a recovery, for her to prove that the slippery condition of the floor was occasioned by any negligence of the defendant.

"3. If you find and believe from the evidence that the guard in question, around the gearing of the spinning machine or frame mentioned in the evidence was, at the time of the injury complained of, a safe and secure guard, as explained in instruction numbered 1, then you should find for the defendant.

"4. And so, if you find and believe from the evidence that the injury complained of happened from a cause or accident which no human knowledge or experience could anticipate, your verdict should be for the defendant. And unless you find from the evidence that the gearing and cog-wheels of the machine in question were so placed that they could be safely and securely guarded, as explained in instruction num--

bered 1, without interfering with their free operation, and with necessary access to them or necessary passageway by or around them, then your verdict should be for the defendant.

"5.   And so, unless you believe from the evidence that the gearing and cog-wheels of said machine were so placed as to be dangerous to the employees engaged around the same, or in operating said machine, while engaged in the performance of their ordinary duties, then your verdict should find for the defendant.

"The court instructs you further that if you find a verdict in favor of the plaintiff, you should fix her damages in such a sum as you may find and believe from the evidence will afford her a fair and adequate compensation for the injuries sustained, and for the bodily pain and mental anguish suffered by her in consequence of her said injuries; and if you find from the evidence that said injuries are permanent in character, you should also take that fact into consideration in estimating said damages.   If, under the evidence and instructions given you, you find in favor of the defendant, you need merely state in your verdict that you find the issues joined in this case in favor of the defendant."

To the giving of which instructions, and to the giving of each of them, the defendant then and there duly excepted.

And the defendant thereupon asked the following instructions, each and all of which the court refused, to-wit:

"1.   Upon all the evidence in the cause the verdict must be for the defendant."—(Offered and refused at end of whole case).

"2.   When the plaintiff took employment in defendant's factory she assumed all the ordinary risks incident to the service, viz., all those risks which are part of the natural and ordinary method of conducting the business.

"3.   The employer does not guarantee or insure the em-

ployee against injury from machinery about which the latter may be employed, but he discharges the measure of his duty if he provides such guards for the security and protection of the employee against injury by the machinery as a person of ordinary care and prudence would deem sufficient for the purpose.

"4.    If the jury believe from the evidence that the rods, in the guard mentioned in the petition, were bent or loosened by the act or conduct of plaintiff's fellow servants, then the defendant is not liable for any injury that may have resulted to the plaintiff from the fact that the rods were bent or loose at the time she was injured.

"5.    If the jury believe from the evidence that the injuries received by plaintiff at the time and place mentioned in the petition were due to accident or misadventure, then the defendant is not liable.

"6.    If the jury believe from the evidence that the condition of the floor, at and prior to the time of plaintiff's injuries, was the natural and ordinary consequence of operating defendant's spinning machines, and that such condition of the floor was apparent or obvious to the plaintiff, then it was one of the risks which she assumed in entering defendant's service and plaintiff can not recover for any injury caused by the condition of the floor.

"7. ,  If the jury believe from the evidence that the condition of the guard at and prior to the time of plaintiff's injury was apparent and obvious to her, then it was one of the risks which she assumed in entering defendant's service, and plaintiff can not recover for any injury caused by the condition of the guard.

"8.    The employer does not guarantee the safety of the machinery about which the servant is employed, nor does he insure the servant against injury from the use of such machinery.

"9.   If the jury find from the evidence that the injuries sustained by the plaintiff were due to her own want of ordinary care at the time of the injury the verdict must be for the defendant."

A motion for a new trial was filed and overruled, and the case is regularly in this court.

I.   The petition in this case is obviously bottomed upon the third section of an act of the General Assembly of this State entitled "An Act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work-hours of employees," approved April 20, 1891, which provides that "the belting, shafting, gearing, and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout, while engaged in their ordinary duties, shall be *safely* and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

It is true the pleader does not refer in express terms to the title of the act or aver that the failure of the defendant to safeguard its jute machine was a violation of said act, but this is not at all necessary.   It is sufficient when the law as it is in this case is a public act, to state the facts which bring his case clearly within the law, and this he has done.   [Kennayde v. R. R. Co., 45 Mo. 255; Reynolds v. Ry. Co., 85 Mo. 90; Emerson v. Ry. Co., 111 Mo. 161.]

The act of April 20, 1891, is similar to the act of the British Parliament, 7 and 8 Vict., chap. 15, sec. 21, which provides that "all parts of the mill-gearing in a factory shall be securely fenced."

The act is remedial and salutary.   The purpose of the Legislature was to preserve the lives and limbs of those whose daily life is spent working on and about machinery wielding

irresistible mechanical power, and was obviously intended to make plain the duty of the master to his servants employed around or about dangerous machinery and to modify the common-law doctrine that in the absence of a statute the master was not bound to fence his dangerous machinery.

A failure to comply with such a statute is negligence. As said by the Court of Appeals in Colliott v. Mfg. Co., 71 Mo. App. 171, "The failure of the master to so guard the gearing, etc., of his machinery would be a violation of a statutory duty, and be negligence *per se*." The character of the required guards is defined by the statute itself; they are required to "be safe and secure."

The constitutionality of such laws is no longer in doubt. Laws like this, created for the safety of those whose necessity compels them to submit to hazards which they would otherwise be unwilling to assume, have been sustained in all the States of the Union, such as provisions for fire escapes, inspection of boilers, ventilation of mines, and for covering and otherwise protecting machinery. [Durant v. Lexington Coal Co., 97 Mo. 62; People v. Warden City Prison, 144 N. Y. 529; People v. Smith, 108 Mich. 531.]

Did the proof bring the case within the statute?

The mill was a jute factory. The machines were constructed with cog-wheels on one end which were so placed as to be exceedingly liable to catch the clothing and limbs of the employees working about them.

So clearly was this recognized that the manufacturer of the machines sent guards along with the machines, and the defendant company deemed them insufficient and placed sheet iron inside of the guards and between them and the cog-wheels, so as to more effectively prevent injury to the operatives, a danger which was greatly enhanced by the slippery condition of the floor caused by the constant spray of oil and sweeping

the oily waste jute over it every day.   In addition to this the machines were separated by narrow passageways not exceeding thirty inches in width, through which the employees, the spinners and "end-minders" were compelled to go in the discharge of their duty.

No more satisfactory evidence of the dangerous position of these machines could be adduced than their own recognition of the fact, by the officers of the company, that guards were necessary to protect the employees.

That plaintiff was lawfully and rightfully present at the machine and engaged in her ordinary duties at the time she slipped and her hand fell into the gearing, was established beyond a peradventure.   The efforts to show she was a volunteer, and out of her place, was wholly unsuccessful.

It is next insisted that there was no evidence that the guards were insufficient; that no human foresight could have foreseen that an employee's hand would have been thrown through the opening caused by the bending of the rods on the guard-railing.   The jury have found that fact against the defendant under the most rigid requirement, and we think properly so.   Two special juries have found that this gearing placed as it was within a few inches of a narrow slippery passageway through which the employees were constantly called to pass attending to their duties was dangerously placed, and required a safe and secure guard, and have found the guard was not safe and secure and by reason of its insufficiency plaintiff's hand and arm were caught and crushed in the cog-wheels.

How can it be said that no human foresight could anticipate danger at this point when experience had already taught that former employees had often slipped and had caught the rods to keep from falling on the oily, slippery floor, until they were so bent as to make this opening in the guard?

Without a guard, one can scarcely conceive of a more

dangerous place for the spinners and minders, who necessarily passed rapidly from one side of the machine to the other, when occasion required. The floor, as all admit, was saturated with oil and very slippery and the liability to slip and fall was greatest in their efforts to turn the corner, and in falling the natural tendency of the feet and lower limbs was to be thrown outward, and the head and arms in the opposite direction, or right into the gearing, and the same considerations which dictated the necessity of a guard at this place, demanded that this guard should be in repair, in other words, "safe and secure" as the statute prescribed.

No less measure of diligence can be written into the statute. As was said in Durant v. Coal Company, 97 Mo. 65, "When the meaning of a statute is clear, courts have no power to make qualifications or additions to cover seemingly omitted cases."

It was shown that this hole had been in this guard-railing for several months at least, and that the superintendent was constantly in the room. The duty was cast by the statute on the company and its superintendent, not only to have the guards erected in the first instance, but to keep them in repair. Nothing was more likely to happen than that some employee might slip on this floor and be thrown against this guard, and in the effort to avert a fall have his or her arm thrust into this gearing. The situation suggested the danger. The witnesses testified that a volume of the Revised Statutes of this State of 1889, could easily have been put through the hole that had been left for months at this corner in the guard. This hole had remained so long defendant was bound to take notice of it, whereas plaintiff, who only went to work on Thursday at this machine had not noticed it, and was not aware of the risk she was running when she was precipitated against the guard by falling on the slippery floor on the following Saturday after-

noon. 'We think the evidence was sufficient to show negligence in not repairing this guard, or closing this opening in it. The circuit court correctly ruled, as did the Court of Appeals, that there was no evidence whatever of contributory negligence on the part of plaintiff.

Neither was there any evidence upon which to predicate an instruction as to the negligence of a fellow servant. The duty of furnishing a safe and secure covering or guard around the dangerous gearing was the master's duty, and could not be delegated to a servant, and had not been, nor was plaintiff chargeable with the action of former employees who, it was attempted to be shown, had bent these rods. Surely that rule can not be made to apply to a servant before that relationship has begun. The opening was in the guard when she was employed. This appeared by all the evidence, and moreover there was no evidence from which it could be inferred that the employees who bent the rods were still employees of the company.

II. But it is argued by the learned counsel for defendant that plaintiff assumed the risk of falling on the slippery floor; that its condition was perfectly obvious, and if she had not fallen the guard, notwithstanding the bent rods and the hole, would have protected her against the cog-wheels. If she had not fallen she would not have been hurt, and consequently the fall caused by the slippery condition of the floor was the proximate cause of her injury. On this point the circuit court instructed the jury that if they found the facts to be as stated in the first instruction, it was not essential to plaintiff's recovery for her to prove that the slippery condition of the floor was occasioned by the negligence of defendant.

In a word, the question is raised whether, if the defendant was negligent in allowing the guard around the machine to become and remain out of repair whereby plaintiff was in-

jured, it can be held liable for that negligence notwithstanding the fact that she would not have received that injury if she had not first stepped on the slippery floor?

It must be apparent from what has already been said that the slipping was not the sole cause of the injury.

The injury would not and could not have happened but for another cause, to-wit, the insufficient and insecure guard around the gearing, and plaintiff was in the exercise of ordinary care at the time she accidentally slipped and but for the unsafe guard would not have been hurt, then under the decisions of this court she is entitled to recover.

The leading case in this State on this subject is Bassett v. The City of St. Joseph, 53 Mo. 290. In that case Mrs. Bassett was walking along a street in said city, in the exercise of ordinary care, when she came to an excavation adjoining the sidewalk which had been left negligently unguarded, when a mule hitched near by attempted to kick her, and in attempting to avoid the mule, she fell into the excavation. It was urged there, as it is here, that if it had not been for the attempt of the mule to kick, the injury would not have occurred, and as defendant was not responsible for the mule, and as the excavation was not the sole cause of the injury she could not recover, but this court said: "It is true that if it had not been for the attempt of the mule to kick, the injury might not have occurred; and *it is equally true, that if there had been no excavation* at hand, the kicking of the mule would have been harmless. How can it be said in such case, that either the one or the other was the sole cause of the injury? Necessarily each cause contributed, but it took both causes combined to produce the injury. . . . . . . We think that if the street or sidewalk was out of repair, and after the city authorities were notified of the dangerous condition of the street or sidewalk, they carelessly permitted the street to remain in this dangerous

condition, and the plaintiff while passing along said thorough-fare was precipitated into the excavation and injured, while using ordinary diligence and care on her part and guilty of no fault, she would have a right to recover, notwithstanding the cause contributing to the injury was the attempt of a mule to kick plaintiff, and she, in attempting to protect herself from injuries about to be inflicted by the mule, fell or jumped into the excavation and was thereby injured." To the same effect is Hull v. Kansas City, 54 Mo. 598, and Brennan v. St. Louis, 92 Mo. 482, in the latter of which, Bassett v. St. Joseph, is expressly approved and followed.

A case strikingly like this is Musick v. Dold Packing Co., 58 Mo. App. 322. In that case an employee of the company slipped and fell into a tank of hot water negligently left uncovered by some repairers in the employ of the company. In that case it was urged that plaintiff slipped upon a piece of ice and in that way slipped into the dip vat of hot water, the slipping upon the ice was the proximate cause, and he could not recover. But the court, through Presiding Judge Smith, said: "It is true that if the plaintiff had not slipped, his limb would not have been plunged into the hot water tank. It is equally true, that though he slipped, the disaster would not have overtaken him had not the tank been uncovered. The slipping was not the sole cause of the injury. The latter would not have occurred except for the presence and co-existence of both causes. The cause of plaintiff's slipping was altogether accidental; if it was the sole cause of the injury the defendant is not liable. But the injury would not have resulted had not another cause combined with the accidental cause. If the plaintiff was in the exercise of ordinary care and prudence at the time he slipped, and the injury is attributable to the absence of the cover over the tank, together with the slipping, then the plaintiff should recover."

These cases announce the settled law of this State, and fully answer defendant's contention that plaintiff's slipping was the cause of her injury.

III.   As to defendant's third and eighth instructions, which the court refused, and which were as follows:

"3.   The employer does not guarantee or insure the employee against injury from machinery about which the latter may be employed, but he discharges the measure of his duty if he provides such guards for the security and protection of the employee against injury by machinery as a person of ordinary care and prudence would deem sufficient for the purpose.

"8.   The employer does not guarantee the safety of the machinery about which the servant is employed, nor does he insure the servant against injury from the use of such machinery."

The third substitutes a less degree of care than that imposed by the statute and the eighth was given by the court of its own motion in its first instruction.

We think the learned circuit judge properly construed the statute and his instructions are marked by his usual care and thoroughness.

Two special juries have found for plaintiff, and their verdicts have met the approval of the circuit court.   We think the judgment is for the right party, and it is affirmed.   All concur.