*C. A. Thatcher,* for plaintiff in error.

*Holbrook & Monsarrat,* for defendant in error.

### INJURY WHERE MORE THAN ONE CAUSE INTERVENED.

[Circuit Court of Lucas County.]

JOHN ZIEHR V. THE MAUMEE PAPER COMPANY.

Decided, January, 1905.

*Master and Servant—Unsafe Place to Work—Slippery Floor—Machine Out of Order—Concurrent Cause of Accident—Guessing at the Real Cause—Contributory Negligence—Assumed Risk—Proximate Cause 94 O. L., 42—Pleading as to Machinery Being Out of Order and Promises to Repair.*

1. Where there are concurrent causes which may have operated, in combination or singly, to produce an accident, the fact that the machine at which the plaintiff was working was out of repair does not furnish a sufficient basis upon which to ground a verdict in his favor, where the injury occurred in such a manner as to render it mere guess work to say the accident would not have occurred had the machine been in order.

2. Where concurrent causes, as in this case, are the immediate and efficient cause of an injury, it is not competent to take one of them away from the other, and say that it and not the other was the proximate cause of the accident.

3. The provision of 94 O. L., 42, making it negligence for a master to permit the use of certain machinery without guards over it for the protection of operatives, does not make it possible for an operative to recover for an injury received in such machinery notwithstanding his own negligence at the time of the accident.

HULL, J.; PARKER, J.; and HAYNES, J., concur.

This action was brought by the plaintiff, who was an employe of the defendant, the paper company, to recover damages for personal injuries sustained while in its employ. He was injured while working about a machine called a "beater," which was, among other machines there, used by the defendant

in the manufacture of paper.  The lower part of this machine appears to have been a sort of tub, in which was put the paper to be soaked up in order to manufacture other paper, and the beater was connected with this tub-like arrangement and with the power, and was used in beating up the paper that was put in there into a pulp.  At the right and in the tub, at or about the top, were two cogwheels, one large one and the other smaller underneath used in working the beater; and above there was an apparatus consisting of wheels and shafts, which, when in order, was used to throw the beater out of gear and leave the upper cogwheels, the large wheel out of the tub and thus stop the beater and separate the cogs so they were not dangerous, and did not revolve after it was thrown out of gear.  These cogwheels were not covered by guards or otherwise, at the time the plaintiff was injured, and had not been for some six months prior thereto, during which time the plaintiff had worked about this machine.

The plaintiff complains that the defendant was negligent in permitting the upper part of the upper wheels, one of them at least, to get out of repair and broken, so that the machine could not be thrown out of gear, the cogs could not be separated, as they could have been had the upper apparatus been in repair; and complains further that the defendant was negligent in having no guard about the cogwheels.    .

On the day of his injury he was working about this beater and when near the machine, he slipped on the boor and fell floor was slippery from water splashing out of this and other machines, so that it was kept slippery all the time practically; and when near the machine, he slipped on the floor and fell forward, one of his hands going between these cogwheels.  The forefinger of his hand was crushed, so that it had to be amputated, and his hand was otherwise injured.  He bases his claim against the company upon the grounds of negligence that I have mentioned.

At the close of the plaintiff's testimony, upon motion of the defendant, a verdict was directed in favor of the defendant, it being claimed that whatever negligence had been shown, had

been assumed by the plaintiff by continuing in the employ of the defendant; and, further, that the machine being out of repair, and the cogs being uncovered were not, but his slipping on the floor was, the proximate cause of his injury; therefore, the plaintiff could not recover.

The first ground of negligence set forth in the petition was the one in regard to the upper wheels being out of repair, so that the machine could not. be thrown out of gear. It was claimed by the defendant that this did not cause his injury; that it could not be said to have caused his injury; and we agree in this contention with the defendant. The plaintiff testifies that when the machine was in repair, he had it out of gear a large part of the time; that it was not necessary to have the beater in operation more than perhaps a half an hour in every four or five hours; and he gives it as his opinion that if the upper apparatus had been in repair, if the machine had not been out of repair at the time he fell, he would not have been injured. He says it was usual for him to throw the machine out of gear when he went to oil it when it was in repair; he also says there was one part of the machine that he oiled every hour.

We think it is not at all certain that if the upper apparatus —we will call that the gearing apparatus—had been in repair, that it would have been out of gear at the time he fell. It is largely guess work on the part of the plaintiff, when he says it would have been out of gear at that time; he has no certain knowledge on that question. In order to throw it out of gear he had to. go near the machine on the side opposite the one on which the cogwheels were. To be sure, in order to throw them out of gear before he oiled it, it would have been necessary for him to go near the machine; he might have approached the wheel, had thrown it out of gear on the side where the cogs were, and might have slipped and fell into the cogs at the time he was approaching it for the purpose of throwing it out of gear in order that he might oil it in safety. So that, to say the mere fact that the upper part of the apparatus was out of repair so that he could not throw it out of gear at that time, was the cause of his injury, would be, it seems to us, mere

opinion and practically guess work, not a thing of enough certainty upon which to rest a verdict.

Coming then to the second ground of negligence, whether the plaintiff can recover on account of the cogwheels being unguarded or uncovered in any way, whether that was the proximate cause of his injury, and if so, whether he had assumed it by continuing in the employ of the defendant, it is claimed by the defendant that the unguarded cogwheels can not be said to be the proximate cause of the injury. It is said that he would not have been injured had he not fallen.

As far as the floor being slippery is concerned, we can not see that there was any negligence in that on the part of the defendant. It was practically impossible to keep the floor from being slippery in doing the work they were doing.

To entitle the plaintiff to recover, it must be made to appear, of course, that the defendant's negligence was the proximate cause of his injury. A case that recently went to the Supreme Court from this county is relied on to some extent to support the contention of the defendant—*Charles Blickley* v. *The Milner Company*. In this case the judgment of the circuit court was reversed and that of the common pleas affirmed, without report. Charles Blickley, the defendant in error, was walking along Jefferson street in this city, alongside of the Milner building, a dry goods store. The Milner Company were using an elevator at the side of the sidewalk, for the purpose of hoisting and lowering goods into the basement, and had left an opening in the sidewalk, guarded only on two sides and not on the front toward the street. Blickley was walking along in the day time; the sidewalk was slippery; it was snowy and slushy. At about that point he met three women abreast, and, in undertaking to pass them, he slipped and fell and slid into this hole in the sidewalk and was injured., The court of common pleas took the case away from the jury and directed a verdict for the defendant. That action of the common pleas court was reversed by the circuit court, for the reason that it must have been held that the hole in the sidewalk was the proximate cause of Blickley's injury. There were, however, two objec-

tions made by Milner Co.'s counsel to the plaintiff's recovery: First, that that was not the proximate cause of the plaintiff's injury; second, that Blickley was guilty of contributory negligence at the time of his injury. Both of these questions were argued in the brief of counsel in the Supreme Court, the question of proximate cause being argued at much greater length than the one of contributory negligence; however, the latter question is argued at some length, and the surroundings discussed; and it is urged that Blickley was guilty of contributory negligence; that he ought to have seen the hole there, among other things; and we do not feel that we can say that the Supreme Court held in that case that the hole in the sidewalk was not the proximate cause. The case is unreported; we have no knowledge of what the holding of the Supreme Court was, or the grounds upon which they based their judgment. Therefore, we do not think we ought to consider that case as an authority upon this question of proximate cause. That may have been the ground upon which the Supreme Court decided the case, and it may not have been. The judges of the Supreme Court may have been divided upon the ground on which the case ought to have been reversed; as to this we have no knowledge whatever; and therefore we feel averse to considering this question in this case, notwithstanding the decision in the Milner case.

Now it seems to us that the true rule is, as we gather it from the authorities, that where, in case of master and servant, like this case, the negligence of the master is one of the causes of the of the servant's injury, is one of the causes without which he could not have been injured as he was, that the fact that the negligence of a third person is also a cause of his injury, or the fact that some inevitable or unavoidable accident occurring at the same time was the cause of his injury, or some inanimate object, that, nevertheless, if the master's negligence may be said to be one of the proximate causes of the man's injury, that the master is not excused, because the negligence of some one else has contributed, as well as his own negligence, or because some accident, some unavoidable accident, happening has

also contributed to the servant's injury, if it appears that without the negligence of the master the accident could not have happened. Now it seems to us that this rule laid down in many of the authorities is a just and reasonable rule. Many accidents are caused by two or more concurrent causes. Take the Milner case. Blickley would not have been injured as he was, if the hole had not been in the sidewalk. To be sure, his slipping contributed to his injury; if he had not slipped down he probably would not have been hurt. But he was walking along the sidewalk in the ordinary way, as he had a right to walk, and accidentally slipped down as men do upon sidewalks. Suppose some sharp object, an upturned knife of some kind used in machinery had been left upon the sidewalk, and he had fallen upon that and injured himself, it would seem as if a person guilty of such negligence leaving such a thing upon the sidewalk ought not to be excused, because, in injuring himself upon it, or at the time of injuring himself, he slipped upon the sidewalk and fell down. Suppose a man puts a tub of scalding hot water in front of his residence, or molten iron, and his neighbor walking along, when near it, slips down, or a child slips down and falls into such a thing, ought it to be said there could be no recovery, any excuse against one guilty of such an act of negligence, because the injured party has been injured while walking along there, has fallen at that place? It does not seem to us that that ought to be the law; that that ought to excuse. If this were true it would be practically impossible to recover from a wrong-doer, or one guilty of such negligence. The case of *Lore* v. *American Manufacturing Company*, 160 Missouri, 608, is very much in point. The first paragraph of the syllabus is as follows:

"1. *Mill Guards—Failure to Provide—Negligence.*—A failure to provide guards or fences for the gearing and cogwheels of spinning machines in a jute manufactory, according to the requirements of the statute, is negligence."

And it may be said here, which I will discuss a little further along, there is a statute in this state, in the 94 Ohio Laws, page 42, requiring machinery of this kind to be guarded, cov-

ered, and making it negligence if it is not. The eighth paragraph of this Missouri case is as follows:

"8. *Combination of Causes—Assumption of Risk.*—Where the injury is caused by defendant's negligence conspiring with an accidental cause, namely, the slipping on the oily floor, of whose condition she well knew, and her falling into a cogwheel of the machine at which she was employed to work through an opening in the guard which the defendant had negligently failed to repair, it will not be held that she assumed the risk of falling on the slippery floor; the facts showing that she would not have been injured by falling had it not been for defendant's negligence, in failing to provide a guard."

On page 625 of the opinion the court says:

"If she had not fallen, she would not have been hurt, and consequently the fall caused by the slippery condition of the floor was the proximate cause of her injury. On this point the circuit court instructed the jury that if they found the facts to be as stated in the first instruction, it was not essential to plaintiff's recovery for her to prove that the slippery condition of the floor was occasioned by the negligence of defendant.

"In a word, the question is raised whether, if the defendant was negligent in allowing the guard around the machine to become and remain out of repair whereby plaintiff was injured, it can be held liable for that negligence, notwithstanding the fact that she would not have received that injury if she had not first stepped on the slippery floor."

And the court held that she could recover. They say on page 627—quoting from another opinion:

"It is true that if the plaintiff had not slipped, his limb would not have been plunged into the hot water tank. It is equally true that though he slipped, the disaster would not have overtaken him had not the tank been uncovered. The latter would not have occurred except for the presence of the co-existence of both causes. The cause of plantiff's slipping was altogether accidental; if it was the sole cause of the injury the defendant is not liable. But the injury would not have resulted had not another cause combined with the accidental cause. If the plaintiff was in the exercise of ordinary care and prudence at the time he slipped, and the injury is attributable to the absence of the cover over the tank, together with the slipping, then the plaintiff should recover."

And I will say in this case it does not appear that the plaintiff was negligent in any respect in the matter of slipping. He was working on the floor that was provided there and conducting himself, so far as can be seen, in an ordinary prudent manner.

A somewhat similar question is discussed in 143 Ill., page 242, *The Pullman Palace Car Company* v. *William Laack,* The question here rather was whether the plaintiff could recover for the negligence of a fellow-servant combined with that of the master. That, as I understand it, is the established law of this state, that he can recover. But the court discuss the question generally somewhat in the opinion. They say on page 261:

"It is well settled that where the injury is the result of the negligence of the defendant and that of a third person; or of the defendant, and an inevitable accident; or an inanimate thing has contributed with the negligence of the defendant to cause the injury, the plaintiff may recover, if the negligence of the defendant was an efficient cause of the injury. (Citing several authorities). In such case the negligence of the two independent persons resulting in injury to the third, where neither is sufficient within itself, both are to be treated in combination as the proximate cause of the injury. It is clear that the negligence of the fellow-servant, in and of itself, could not have produced the injurious results suffered by appellee. The negligence of appellant and the fellow-servant were therefore concurrent causes, and combined were the proximate cause of the injury. An efficient cause is simply the 'working cause,' or that cause which produces effects or results (Webster), and a proximate cause is that which stands next in causation to the effect, not necessarily in time or space, but in causal relation."

Now it is very clear in this case—at least very probable, almost certain—that the plaintiff would not have been injured by slipping on the floor and falling at this time had these cogs been covered. It was the cogs that actually inflicted the injury upon him, the cogwheels in which he threw his hand. The slipping, combined with the negligence of the defendant in leaving the cogs uncovered, produced his injury. The question is discussed by the leading text-books. See Thompson's Com-

mentary on the Law of Negligence, Section 3857, page 122, where the rule is stated as to an injury which is the result of the occurrence of several causes. The author says:

"Here, as in other cases where an injury is the result of several causes combined and concurring to produce it, the master will be liable if he is responsible for any one of such causes."

And further along in the section he says:

"The test is, to consider whether the injury would have happened to the servant but for the negligence of the master, with respect to the concurrent act, the omission of the third person. This, where a servant was injured because of the defective appliance which the master should have repaired, the latter shall not relieve him from liability because the proximate cause of the accident was the act of the third person, that it would not have occurred but for the failure to repair. Where, in a suit for personal injuries due to defective machinery, it appears that the defect (insufficiently protected knives) was due to the defendant's negligence and was the immediate cause of the injury, the fact that the initial and moving cause was the plaintiff's slipping on the floor, in which respect the defendant was not liable, will not preclude a recovery."

And the same doctrine is laid down in the recent work of Labat on Master and Servant, Vol. 2, Sec. 813, page 2246:

"Where several causes concur to produce certain results, any of them may be termed 'proximate' provided it appears to have been an efficient cause. The general rule applicable to all such cases illustrates this situation, except those in which the contributory negligence of the servant himself is involved, is that in order to establish his right of action, it is merely necessary to show that none of the co-operating causes of the injury was a culpable act or omission for which the master was responsible. This rule holds good whether the other causes were also defaults for which he was responsible or were due to some event or some condition for which he was not required to answer."

It seems to us that these authorities lay down the law as it ought to be, and as we believe it to be, that where two con-

current causes, as in this case, are the immediate and efficient cause of the servant's injury, you can not take one of them away from the other and say that it was the proximate cause and not the other. If it were evident that the person would not have been injured had not both causes been present, then one is the proximate cause, and may be considered so, as well as the other.

The other important question in this case is whether Ziehr assumed this risk by continuing in the employ of the defendant, knowing that the cogwheel was uncovered. At common law and before the passage of this statute to which I have referred, this would undoubtedly have been true. It is said that where a servant continues in the employ of his master, without objection, without promise of repair of machinery, that he is presumed to have agreed to assume the risk by an implied contract on his part that he will take his chances, and if he is injured he can not recover. It was further claimed in this case that Ziehr had made complaint of this machinery and there had been a promise to repair it, and that, therefore, he comes within the rule of such a case. In our judgment, it is not pleaded in the petition that Ziehr had complained of the uncovered cogs, and that the master had promised to repair them. It is alleged that he had promised to repair certain things. They promised that the superintendent would see that the same were repaired. That is the allegation of the petition, and just before that is this allegation: "Plaintiff says that he told the person in charge of said mill who had authority over plaintiff, and who was the representative of the defendant company in conducting this said business, that such attachments were broken and out of repair." Now before that the word "attachments" were used with reference to the upper part of this wheel, that is the roller and the gearing, and there is no square allegation in the petition that he had made it definitely plain in regard to the cogs, or that the master had promised to repair them, and there is no testimony in the record coming up to that point that he had complained especially of the cogs, or that the master had promised to cover them.

He says he complained generally of the machine to the master and the master promised to fix it up; but we do not think that the testimony rises to the point necessary to show a complaint of a particular defect in the machine, so far as the cogs were concerned, and a promise to repair them. So that the ·case comes down to the question whether under this statute he assumed the risk by continuing in the employ of the defendant. The statute is found in 94 Ohio Laws, page 42, passed March 20th, 1900, and it provides for and requires the covering of such machinery as these cogs. The doctrine of the assumption of the risk is based upon an implied contract on the part of the employe that he will assume the risk so far as the defect in machinery is known to him, and this implied contract arises from his continuing in the employment.

He does, as a matter of law, assume the natural and ordinary risks of the employment, but he does not assume the risk of negligence of the master, ordinarily.

The case of *Krause et al* v. *Morgan*, 53 Ohio St., 26, is cited as an authority, notwithstanding a statute of this character, an employe by remaining in the employ of the master where he knows the machinery to be defective, does assume the risk the same as he did before the passage of the act. The statute makes a violation of it negligence in itself, by providing that ordinary care shall consist of doing certain things, and the Supreme Court in this case, in the 53d Ohio State, say that failure on the part of the master to observe the statute in question in that case was in itself negligence. We think from a careful reading of that case that the Supreme Court did not decide nor intend that a servant, by remaining in the employ of the defendant where there· is a defective machine or something of that character, thereby assumed the risk of injury therefrom, the same as he did before the passage of such a statute. This case was one against a miner; it was decided before the passage of the act to which I have referred; but by a statute then in force, a miner was required to take certain precautions against fire damp, a highly explosive gas being in existence in the mine; he was required to have a safety lamp and to make certain inspections. In this case of *Krause* v.

*Morgan,* it seems that Morgan was an employe of a mine owner, and upon going into the mine one day, was injured by an explosion from fire damp. But the facts in the case as disclosed by the record show that Morgan knew or had reason to know that there was fire damp in this mine, knew it was not being properly inspected, but, notwithstanding this he went into the mine with an open light and was injured thereby. The Supreme Court discusses all these facts; they were discussed in the briefs of counsel, and we think the Supreme Court rested their decision upon the ground that, notwithstanding such a statute as this, one injured must be in the exercise of ordinary care at the time of his injury to entitle him to recover; that the statute does not abrogate or undertake to wipe out the doctrine of contributory negligence and this seems to be perfectly sound, that similar statutes are not passed to protect a man against his own negligence, but if guilty of contributory negligence, he can not recover. The court say in the second and third paragraphs of the syllabus:

"2. One who voluntarily assumes a risk thereby waives the provisions of a statute made for his protection. And where a statute does not otherwise provide, the rule requiring the plaintiff in an action for negligence to be free from fault contributing to his injury, is the same whether the action is brought under a statute or at common law.

"3. Under Sections 298 and 301 of the Revised Statutes, which require the operator of a coal mine to keep the same free from gas, and to have the working places examined every morning with a safety lamp before workmen are allowed to enter, and giving a cause of action to a person injured for direct damage occasioned by any violation or willful failure to comply with the requirements of the statute, an employe can not maintain an action against an employer for an injury following such violation, unless at the time he was injured he was in the exercise of due care."

Now, while the court say in the first part of paragraph 2, which I have read, "One who voluntarily assumes a risk thereby waives the provisions of the statute made for his protection," etc., the key-note of these two paragraphs of the syllabus is that one must exercise ordinary care, notwithstanding such

a statute as this, and if he does not, he can not recover, and the expression, "One who voluntarily assumes a risk thereby waives the provisions of the statute made for his protection," must be construed in the light of the facts of the case; and in the light of the discussion in the opinion and the dominating question in the case, the judge who wrote the syllabus evidently meant that one who assumed such a risk, a man who goes in a mine with an open light knowing, or having every reason to know from what he has seen and heard, there was fire damp in the mine, or probably there was fire damp in it, a man by such conduct as that is guilty of contributory negligence; and he assumes the risk of doing what he did, notwithstanding such a statute as this, and it is the sole question, practically, that is discussed in the briefs of counsel in the case, counsel for plaintiff in error being Day, Lynch & Day—Day being now one of the judges of the Supreme Court of the United States.  Judge Spear says, on page 30:

"The defense was a denial of negligence and omission of duty, and that the injury occurred by reason of the willful negligence of plaintiff after being warned not to enter the part of the mine where the explosion occurred.  Plaintiff, by reply, denied the warning and the negligence."

And after discussing the question at length, he says on page 41:

"The text of the action in question furnishes no encouragement to the idea that one who is at fault himself which contributes directly to, and is the proximate cause of, the accident, may yet recover because of the previous failure of the operator of the mine to comply with the statute."

On page 42 of the opinion, Judge Spear further says:

"And we think it still wise to adhere to the old rule that where the injured party knowingly and deliberately assumes the risk that leads him into immediate danger, he ought not to have a remedy for injuries brought on by his own act and arising from perils that are obvious and certain.  A safe, and, it seems to us, a humane policy, looking to the prevention of accidents, is to require that all persons engaged in hazardous undertakings shall act up to the standard of due care set by the law."

Now it is evident from reading this case throughout that it was not intended by the Supreme Court here to discuss the doctrine of assumed risk technically with respect to this case, and where Judge Spear uses the terms "assumed risk," he evidently means that he took his chances and encountered peril at his own risk in going into such a place with the knowledge that this man had. If it had been the intention of the court to discuss the question of whether under such a statute as this a man assumes the risk by continuing in the employ notwithstanding this statute, we think it would have been made perfectly clear. And by that we mean, of course, the ordinary risks, it would not be negligence knowing of these, to simply remain in the employ of the master with defective machinery. There is a difference between such an act as that and contributory negligence as is said by the Supreme Court in the case of *The Van Duzen Gas & Gasoline Engine Co.* v. *Schelies,* 61 Ohio St., 298:

"1. A servant assumes only such risks incident to his employment as will happen in the ordinary careful management of the business of the master; such as arises from the fault of the master are not assumed, and the servant may recover for injuries therefrom unless his own fault contributed to the accident.

"2. One who, as a servant, does that in his employment which he is ordered to do by the master, and is injured by the culpable negligence of the latter, is not deprived of a right to recover for the injury by the fact that it was apparently dangerous, if a person of ordinary prudence would, under the circumstances, have obeyed the order, provided he used ordinary care in obeying it."

So that it is not negligence in and of itself to remain in the employ of another and operate a defective machine—it may be operated in a negligent manner—and the servant is bound to operate it carefully; but whether it is negligence or not to operate it at all is a question for the jury, and if the circumstances are such that an ordinarily prudent man would continue to operate it, as is said in the case I have last cited, it would not be negligence as a matter of law. The difference between negligence and assumed risk is very often confused.

It is pointed out very clearly in a decision of the Supreme Court by Judge Shauck from which I will read a few lines later. It does not seem to us, following especially a decision of Judge Taft which I will refer to hereafter, that continuing in the employ under circumstances that this man did, if in the face of such a statute as this, that by so doing, he assumes, as a matter of law, the risk. This statute was passed for the protection of employes; it is a penal statute and to hold that the employe by continuing in the employ of the master under such circumstances can not recover against the master, notwithstanding such statute, is to practically abrogate and wipe out the statute. In the case of *Narramore* v. *Cleveland, C., C. & St. L. Ry. Co.*, where a similar question arose, Judge Taft says:

"The doctrine of assumption of risk is based upon an implied contract, and it is contrary to public policy to permit an employe and employer by their own implied contract to abrogate or set aside a portion of a penal statute."

Discussing a similar statute, he also refers to this decision of the Supreme Court of Ohio in the 43 Ohio St., and arrives at the conclusion that the case there was grounded simply on contributory negligence, and the Supreme Court did not decide or intend to decide that an employe under those circumstances assumed the risk. I will read from this opinion. It was a decision of the Circuit Court of Appeals before Judges Taft and Lurton, circuit judges, and Thompson, district judge, This case is also found in the 37 C. C. A., 499. Judge Taft, in delivering the opinion, said (on page 302):

"The only ground for passing such a statute is found in the inequality of terms upon which the railroad company and its servants deal in regard to the dangers of their employment. The manifest legislative purpose was to protect the servant by positive law, because he had not previously shown himself capable of protecting himself by contract; and it would entirely defeat this purpose thus to permit the servant 'to contract the master out' of the statute. It would certainly be novel for a court to recognize as valid an agreement between two persons that one should violate a criminal statute; and yet,

if the assumption of risk is the term of a contract, then the application of it in the case at bar is to do just that.''

On page 304, quoting the case of *Hesse* v. *R. R. Co.*, 58 Ohio St., 167, the court say:

''Acquiescence with knowledge is not synonymous with contributory negligence. One having full knowledge of defects in machinery with which he is employed, may yet use the utmost care to avert the dangers which they threaten.''

And near the bottom of page 304 he says:

''Assumption of risk and contributory negligence approximate where the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra compensation, one who assumes the risk can not be said to be guilty of contributory negligence, if, having in view the risk of danger assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences.''

It could not be said as a matter of law that a man was negligent if he continued in the operation of a machine where the cogs were uncovered. On page 305, referring to the Krause case, 53 Ohio St., he says:

''Where the employe, in spite of a warning from his superior, and in the face of the most palpable danger, exposed himself to certain injury, and then sought to hold his employer liable because he had not employed the statutory methods of protecting him from the danger.''

Before that he says:

''One who does not use such care, and who, by reason thereof, suffers injury, is guilty of contributory negligence, and can not recover, because he, and not the master, causes the injury or because they jointly cause it. Many authorities hold that contributory negligence is a defense to an action founded on a violation of statutory duty, and this undoubtedly is the proper view. Such is the case of *Krause* v. *Morgan*, 52 Ohio St., 26.''

As I have said, we feel doubly certain in the construction we put upon the case in the 53d Ohio St., supported by such

a tribunal as the Circuit Court of the United States and in an opinion delivered by Judge Taft. A well-reasoned case in this state, and construing the case in the 53 Ohio St., is a decision by Judge Littleford of the Common Pleas Court of Hamilton County, *Case* v. *Rahn-Mayer-Carpenter Co.*, 12 Lower Decisions, 597, in which the court holds that Judge Taft put the proper construction upon that case, in holding that it was not one of assumption of risk, but contributory negligence.

It seems to us that it would practically defeat the purpose of laws of this class to hold that an employe, by continuing in the employ, waived the benefit of this statute, and hold that by so doing he entered into implied contract with his employer that a penal statute should be waived, abrogated and repealed, so far as that is concerned, and that such a holding would be contrary to public policy. As stated by Judge Taft in this opinion such legislation is enacted not only for the protection of employes, but also in the interest of the public or commonwealth who are interested in protecting men from personal injuries, and should be maintained rather than overthrown by the courts.

There are some exceptions taken to the ruling of the court on the introduction of evidence. A witness was asked, as appears on page 25 of the record, if it was practicable to have guards over these wheels. This was excluded by the court. We think this should have been admitted. This was a proper question, and one of the questions in the case; and that it was error to exclude it. But it appears in other parts of the record that evidence of this kind was admitted, so that error was not very material so far as this record is concerned. But we give our opinion upon it as the case may be tried again.

We think upon the facts of the case, under the law as we interpret it, the plaintiff was entitled to have his case go to the jury. For these reasons the judgment of the court of common pleas will be reversed.

*Charles A. Thatcher*, for plaintiff in error.

*Doyle & Lewis* and *J. W. Schaufelberger*, for defendant in error.