STATE ex rel. PHILLIPS, Appellant, v. GREEN et al.,
Respondents.

St. Louis Court of Appeals, March 19, 1907.

1. **OFFICERS: Neglect of Duty: Damages.** A ministerial officer is liable in a civil action to one damaged by his negligent performance of his official duties.

2. ———: ———: **Presumption of Knowledge of the Law.** A person dealing with a public official in his official capacity has the right to presume that such officer knows the law and the duties incumbent upon him and that he will execute them in accordance with the special knowledge requisite to the proper performance of the functions of his office.

3. ———: ———: **Soliciting Officer to Violation of Duty.** Where a vendee of land together with a beneficiary in a deed of trust covering the land went to the Recorder of Deeds, saying: "We have come to make satisfaction" of a deed of trust, this would not support a finding that the vendee solicited the recorder to release the deed of trust without the production of the notes securing the same and where the recorder thereupon released the deed of trust without requiring a production of the notes, it was a violation of his duty for which he would be liable to the vendee damaged by reason of such a satisfaction.

4. ———: ———: **Presumption of Knowledge of the Law.** The fact that the vendee who was present and saw the unauthorized satisfaction of the deed of trust is presumed to know the law, would not excuse the officer nor prevent the vendee's recovery for the damage suffered by him; he had a right to presume the officer possessed a peculiar knowledge of the duties pertaining to his office and would properly discharge it.

5. ———: ———: **Damages.** Where a vendee of land executed a mortgage on other land to secure the purchase price making a mistake in the description of such land, and afterwards discovered that the land conveyed to him was incumbered by a mortgage and demanded a release of the mortgage before he would correct his own mortgage securing the purchase price, and the recorder caused the mortgage on the land purchased to be released without a production of the notes so that it was afterwards foreclosed and the land lost to the purchaser, he could recover in an action against the recorder upon his official bond for the damage incurred by him; the fact that he had previously made a mortgage by mistake on his own land did not show that he was not damaged because he afterwards corrected the mistake and paid the mortgage.

6. ——: ——: ——: **Measure of Damages.** The measure of the vendee's damage in an action against the recorder in such case was the amount which it would have been necessary for him to pay to satisfy the mortgage improperly released.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED *(with directions).*

*Jere S. Gossom* for appellants.

(1) It is admitted by defendants that recorder Green negligently permitted and allowed Jackson to enter on the margin of the record satisfaction of the Rice deed of trust without requiring the said Jackson to produce the notes secured thereby or to otherwise account for said notes in the manner required by law. This was a violation of a statutory duty on the part of defendant Green; and a breach of the conditions of his official bond. R. S. 1899, sec. 4358. (2) The failure of defendant Green to require Jackson to produce the notes, secured by the Rice deed of trust, before allowing him to make any entry of satisfaction on the record was a violation of a statutory duty and was negligence *per se.* Colliett v. Am. Mfg. Co., 71 Mo. App. 171; Lore v. American Mfg. Co., 160 Mo. 622. (3) It makes no difference whether relator Phillips paid the Rice notes to Jackson in cash or by delivering to him his notes for $600 secured by the trust deed on his home, either was a satisfaction of the Rice deed of trust and the result was the same; and under section 4363, R. S. 1899, at the request and at the cost of Phillips, it was Jackson's duty to go to the recorder's office and enter satisfaction of said Rice deed of trust; and under the provisions of section 4358, R. S. 1899, it was recorder Green's duty to require the said Jackson to produce the notes secured by said trust deed before allowing him to enter the satisfaction thereof.

124 App.—6

*J. R. Brewer* for respondents.

(1) The plaintiff waived the error of the court (if an error) in overruling his motion to strike out the defendant's amended answer by offering evidence in rebuttal. To have availed himself of this error he should have let judgment go against him and stood on his exception. Hill v. Morris, 21 Mo. App. 256; Hamlin v. Carruthers, 19 Mo. App. 567; Scoville v. Glasner, 79 Mo. 449; Fuggle, Admr., v. Hobbs, 42 Mo. 537; Pickering v. Tel. Co., 47 Mo. 457; Sauter v. Leveridge, 103 Mo. 615; Williams v. Railroad, 112 Mo. 463; Herman v. Glann, 129 Mo. 325. (2) Relator W. E. Phillips stood by and saw the manner of the satisfaction of the Rice deed of trust; saw that the notes were not produced for cancellation; saw that no affidavits were made as required by section 4358, R. S. 1899; and if he afterwards delivered his note to Jackson, the injury is as much his fault and negligence as it was of the defendant, Green, and he should bear the consequences of his own negligence. It is a rule of law that the negligence of the plaintiff which contributes directly to the cause of the injury will prevent recovery, and this rule is without exception. Hogan v. Railroad, 150 Mo. 36; Dunkman v. Railroad, 16 Mo. App. 54; Dunkman v. Railroad, 95 Mo. 55; State ex rel. v. Green, 112 Mo. App. 108.

NORTONI, J.—The suit is on the official bond of the defendant, who was at the time of the breach complained of, circuit clerk and ex-officio recorder of deeds for Pemiscot county. The breach declared upon is that the defendant, as recorder of deeds, permitted one Jackson to enter on the margin of the record, satisfaction of a deed of trust on certain lands which plaintiff had recently purchased, without presentation of the notes therein secured for cancellation or accounting for their absence by proper affidavit, whereby it was made to appear to plaintiff that such indebtedness and the lien of

the deed of trust on the lands mentioned was discharged, when in fact such indebtedness was still unpaid, and the notes and deed of trust then outstanding in the hands of the Pemiscot County Bank, an innocent third party, which bank afterwards foreclosed the deed of trust and sold the lands, to the plaintiff's damage in the sum of $————, the amount of such incumbrance. The facts out of which the controversy arose are as follows: One Jackson, a resident of Caruthersville, owned a small tract of land in that vicinity and sold the same to William J. and Judson Rice on time payments, for which they executed to him their certain promissory notes, two for $100 each, and one for $300, and secured the same by a deed of trust on such lands, which deed of trust was duly recorded, etc. About the time these notes became due, Rice brothers, a couple of young men, notified Jackson that they would be unable to pay the same and proffered to convey the lands to him or to any one to whom he might sell and thus discharge their debt. Thereupon Jackson approached Mr. Phillips, the relator herein, and informed him that inasmuch as the Rice brothers could not pay for the land, he proposed that Mr. Phillips buy the same. After some negotiations, Mr. Phillips agreed to purchase the lands at the price of $600 for his two sons, Charles and Samuel, and to execute his notes to Jackson for the amount of the purchase price and secure their payment by a deed of trust on his home place, another property entirely. In accordance with this proposition, the agreement was made and Jackson procured the conveyance of the lands from the Rice brothers by warranty deed, dated April 12, 1902, to relator's sons, Charles and Samuel Phillips. It appears that the trade was consummated and the deed delivered to relator Phillips, April 24, 1902, on which date Mr. Phillips and wife executed to Jackson their three negotiable promissory notes for $200 each, due December 15, 1904, and a deed of trust intended to

cover their home farm to secure the payment thereof. These notes and deed of trust were on that day delivered to Jackson in exchange for the deed from the Rice brothers conveying the lands first mentioned to the Phillips brothers. This deed of trust was duly recorded April 25, 1902. A few days thereafter, the relator was advised by the Rice brothers that Jackson held a deed of trust from them covering the lands which he had purchased and that he had better see about its release or satisfaction, and about May 1st, he called upon the defendant recorder of deeds in his office to ascertain whether or not such deed of trust was on record. The defendant examined the record, found such deed of trust thereon and exhibited the record thereof to relator, whereupon relator announced that Jackson must release the same. It next appears from the evidence that an error in the description had been made in drafting the deed of trust from Phillips and wife to Jackson, and on May 10th, Jackson, seeking a correction of this error, in company with one Garrett, a notary public, called upon Mr. Phillips at his home to procure a new or corrected deed of trust securing the original debt, the notes of April 24th. Mr. Phillips agreed and did come to Caruthersville that afternoon, accompanied by his wife and the defendant says that Phillips called upon him again on that day and inquired a second time with reference to the satisfaction of the deed of trust on the lands he had purchased for his sons; that defendant exhibited the record to him a second time, which was still unsatisfied, and that Phillips remarked that Jackson said he had lost or mislaid the notes signed by the Rice brothers and described in that deed of trust; that Jackson must release the same, etc., and departed; that later in the day, Phillips and Jackson entered the defendant's office together and Phillips said: "We have come to satisfy the record or to make that satisfaction," whereupon the defendant produced the record and filled out the blank form for

satisfaction on the margin, Jackson signed the same in the presence of Mr. Phillips and defendant as recorder, attested the act of Jackson with his official signature; that Jackson did not produce for cancellation the notes described in such deed of trust nor did he make or furnish the necessary affidavit as to their payment, loss or destruction; that he, the defendant, did not request nor require Jackson so to do and on the following questions being propounded to him, he explained his conduct as follows:

"Q. You knew at that time that it was your duty to require Jackson to produce the notes cancelled in your presence, or make affidavit? A. As far as knowing it I never had examined the laws in regard to it. I had been under the impression up to that time, and after that time, that so long as a beneficiary in a deed of trust proffered the satisfaction of the deed of trust it was not necessary for him to produce the notes, and in case he had assigned those notes, and they were in the hands of some other persons, then it would be necessary to produce the cancelled notes.

"Q. Did you make any demand on Jackson to produce the notes? A. I did not.

"Q. Did you ask him anything about the notes? A. Not a question.

"Q. You never required him to make an affidavit, or any one for him? A. No, sir."

It appears that on that day, May 10th, Phillips and his wife, executed and delivered to Jackson a new or second deed of trust for the purpose of correcting the error in description mentioned in the prior instrument and securing the same and indentical notes which had been delivered to Jackson sixteen days prior thereto April 24th, which deed of trust afforded Jackson a first lien on the Phillips home. All of the evidence tends to show that Phillips refused to execute this second or corrected deed of trust on his home property until Jack-

son had first satisfied the deed of trust securing the Rice notes on the lands he had purchased. It is further shown that Jackson had sold and assigned the notes and deed of trust from Rice brothers to himself, prior to maturity, to the Pemiscot County Bank, and that said bank was the legal holder of the same at the time defendant Green permitted Jackson to indorse the record satisfied; that the bank afterwards caused the lands to be sold under such deed of trust to satisfy the debt, and that Phillips lost the same by such sale. Jackson sold and assigned the notes given by Phillips and wife on their home place, before maturity, to the Fredericktown Trust Company, and Phillips paid them when due. It appears that Jackson was insolvent at the time; that he departed from Pemiscot county immediately after the transaction and before Phillips learned that the bank held the Rice notes against the land he had purchased, and the satisfaction of the deed of trust entered by Jackson was therefore ineffectual. It is also said that Jackson was indicted and has ever since been a fugitive from justice. For these reasons, Phillips is without remedy against Jackson to compensate his loss. It appears that while Rice brothers, who, at Jackson's instance, had executed the warranty deed to Phillips conveying the lands on which the deed of trust was then outstanding, acted in good faith in the matter, supposing, of course, that Jackson would release the deed of trust, they are also insolvent and that Phillips is without remedy to compensate his loss by suit on the covenants of that deed against them. On this state of facts, Phillips instituted this suit as relator, the State of Missouri to his use, upon defendant's official bond as recorder, and predicates upon defendant's misfeasance and negligent official act in permitting Jackson to indorse the record satisfied, contrary to the statute, to his detriment and loss. A jury being waived, the trial was had before the circuit court and the finding and judgment were for the defendant. Plaintiff appeals.

1. So much of section 4358, R. S. 1899, as is pertinent here, is as follows:

"In case satisfaction be acknowledged by the payee or assignee, . . . the note or notes shall be produced and cancelled in the presence of the recorder, who shall enter that fact on the margin of the record and attest the same with his official signature. . . . If such note or notes are not produced for cancellation for the alleged reason that they have been lost or destroyed, the recorder, before allowing any entry of satisfaction to be made on the record, or any deed of release to be placed on file or record, shall require the *cestui que trust* named in the mortgage or deed of trust desired to be released, or his legal representative, to make oath, in writing, stating that the notes or other evidence of debt named in the mortgage or deed of trust sought to be released, have been paid and delivered to the maker thereof or his representatives; and the recorder shall also require the maker of such note or notes, or his legal representative, to make affidavit in writing that the note or notes in question have been paid and cannot be produced because lost or destroyed, and that they are not then in the possession of any person having any lawful claim to the same; which said affidavit shall be attached to the record of the mortgage or deed of trust to be satisfied."

These provisions point out to the recorder, and all other persons, for that matter, how a deed of trust shall be satisfied by marginal entry and, in event the note or notes are not presented, it in positive and express terms provides that the recorder shall require the affidavit mentioned, etc., before he shall allow an entry of satisfaction. His duties in the premises are thus positively fixed and defined by the statute and any negligent violation of this positive statutory duty on his part is therefore, under the universal rule, negligence *per se*. [Colliott v. Amer. Mfg. Co., 71 Mo. App. 163-171; Lore v.

Amer. Mfg. Co., 160 Mo. 608-622, 61 S. W. 678.] At common law, a ministerial officer is liable in a civil action to one damnified by his misfeasance, or the illegal or negligent performance of his official duties. [23 Amer. and Eng. Ency. Law (2 Ed.), 377; St. Joe, etc., Ins. Co. v. Leland, 90 Mo. 177, 2 S. W. 431.] The law in this respect is not controverted but the proposition advanced by defendant is that the relator, Phillips, cannot recover because he contributed to and in fact superinduced the negligent act of the defendant, which resulted in his loss, and when this case was here on a former appeal involving the pleadings only (see State ex rel. Phillips v. Green, 112 Mo. App. 108, 90 S. W. 403), the court held that if in fact Phillips had solicited the defendant to so negligently permit the entry of satisfaction, such conduct would preclude a recovery, the resulting loss having thus been entailed at relator's instance and solicitation, and we entertain no doubt that the doctrine there announced is sound law. The evidence fails entirely to show however, that Mr. Phillips solicited the release so to be entered. The defendant, as a public officer, stands positively charged by the statute with the performance of his duties in a specific manner. The presumption of law is that such officer is aware of the duties pertaining to his office and the manner of their due execution. [Broom's Legal Maxims (7 Amer. Ed.), 944; 22 Amer. and Eng. Ency. Law (2 Ed.), 1269.] Persons dealing with public officers in their official capacity, have the right to presume as the law presumes, that the officer knows the duties incumbent upon him under the statute and that he will execute them in accordance with this special knowledge requisite to the proper performance of the functions of his office; thus presuming the relator, a farmer, possessed in no degree of peculiar knowledge of the mode and manner to be pursued in satisfying deeds of trust, entered the defendant's office in company with Jackson, whose duty it was

to satisfy the mortgage, and remarked: "We have come to satisfy the record, or to make that satisfaction." Now, awarding to the defendant the full force and effect of these words, and all reasonable inferences therefrom, when viewed in the light of his previous conversations, in support of the judgment of the court below, there is naught tending to support the conclusion that Phillips invited or solicited the defendant recorder to release the instrument in a manner other than that provided by statute. Indeed, the language employed indicates that the relator desired the release properly made, of course. It therefore follows that there is no evidence to sustain the judgment of the trial court on the theory that relator solicited the defendant to permit the satisfaction to be entered in a manner other than that pointed out by the statute.

It is suggested, however, that while it is true the law presumes the due execution of official duties by a public officer, and the relator had the right to presume the defendant would do his duty, yet notwithstanding this presumption, the relator himself is presumed to know the law, as is every citizen. [22 Amer. and Eng. Ency. Law (2 Ed.), 253.] And this being true, that he is charged with knowledge of the manner provided by the statute quoted for satisfying deeds of trust and that inasmuch as he was present when the release was made, without the production or cancellation of the notes or the requisite affidavit, he had actual knowledge as a matter of fact of what was there done and this, together with his constructive knowledge of the law, affixed by the presumption mentioned, could not operate to mislead him to the effect the deed of trust was properly satisfied when in truth and in fact it was not, for he, being thus charged by presumption with knowledge of the lawful manner of satisfying deeds of trust, must know as a matter of fact that no adequate satisfaction was there made, and could not have been misled thereby

to his ultimate loss and damage. The fact is, strange as it may seem, both parties, as the evidence discloses, were actually ignorant of the law providing the manner for the satisfaction of the deed of trust. But this proposition with reference to the relator's presumed knowledge of the law, is beside the case as presented in our opinion. As stated, the suit is on the defendant's official bond, the obligation of which is that the defendant "shall faithfully perform the duties enjoined upon him by law as recorder," and of which obligation there is a manifest breach which resulted in direct pecuniary loss to the relator, and it seems to us that the fact of relator's presumptive knowledge that the satisfaction was ineffectual because of failure to require the production of the notes or the requisite affidavit, cannot operate to preclude his right of recovery for the consequent loss, for it was the duty of the defendant, a public officer, to familiarize himself with the duties of his office and the obligation of the bond proceeds upon the theory that he either will do or has done, and in event of resulting loss to a person dealing with him in that capacity on account of his failure or negligence in that behalf, a right of action shall thereupon accrue upon the bond to such person damnified, and it seems that on a fair and just view of the case, the relator had the undoubted right to rely upon defendant's proper performance of this positive duty affixed by the statute peculiar to his office of which he must be considered to have special knowledge and estopped to assert the contrary. In this feature of the case, it may be likened to those cases of deceit against one in a position possessing peculiar and special knowledge in which instance the law will not permit him to assert for knowledge what he must have known that he ought not even to have believed, on the theory that it is the utterer's duty to know such things as are of peculiar knowledge to him, as assertions made by persons under such circumstances are likely to carry great

weight, and when losses accrue as a result thereof, an
estoppel is not infrequently adjudged against the person
thus possessed of special knowledge who has, even with-
out an evil design, misled another to his damage: [1
Bigelow on Frauds (1888), 509; Raley v. Williams, 73
Mo. 310; Serrano v. Miller & Teasdale Com. Co., 117
Mo. App. 185-197.] It is certain that these parties were
not on equal footing with respect to the act to be per-
formed, notwithstanding the presumption as to knowl-
edge of the law; the one, an officer charged with the
special duties pertaining to his office, peculiar knowl-
edge of which he is presumed to have by all persons deal-
ing with him in that capacity, and the other, an illiter-
ate man, as the record discloses, charged indeed with
the general presumption obtaining with respect to all
citizens knowing the law, yet relying, as he evidently
had the right to do under these circumstances, upon
the special knowlege of the public official to see that
the satisfaction was properly had. We are persuaded
that to defeat relator's right of recovery on the facts
in judgment by indulging the presumption mentioned
would be a misapplication of the wholesome principle
upon which it rests. We have been unable to find au-
thority for applying the general presumption against
relator to the extent suggested. It seems that this pre-
sumption is always appropriate and more properly ap-
plied against persons who are standing in the position
of having done some affirmative act without actual
knowledge of the law. In such cases the law presumes
knowledge on their part and consequently charges them
therewith. It is pointed out by Broom, Legal Maxims,
353, also by Mr. Lawson in his excellent work on Pre-
sumptive Evidence (1899) 5, that even this almost omni-
present presumption which so universally obtains, finds
limitations on its proper application and we feel that
to apply it here as suggested, would not only be improper
but highly unjust.

2. The next proposition advanced in support of the judgment is that inasmuch as the uncontroverted evidence shows relator purchased the land from Jackson and executed his notes and deed of trust on his home April 24th or sixteen days prior to the negligent act of the defendant recorder in permitting an ineffectual satisfaction to be entered, and without knowledge at the time of the outstanding deed of trust, then his loss resulted from the execution of the notes on April 24th, which he was, of course, obligated to pay, and did not result from the negligence of the recorder in permitting the ineffectual satisfaction to be entered on May 10th; in other words, the proximate cause of relator's loss is his own negligence in purchasing incumbered lands without ascertaining and causing the deed of trust to be released prior to executing his notes of April 24th, and not the negligence of the recorder of May 10th, which occurred sixteen days after relator had executed the notes. There is no doubt but this proposition is sound and would preclude a recovery here were this the entire transaction, but it is not. There are other facts in proof which affixed liability on the defendant. It will be remembered that there was an error in the description in the deed of trust executed by relator and wife of April 24th, and that they executed another like deed to correct this error on May 10th. In the interim, between April 24th and May 10th, the date of the corrected deed, relator had discovered the outstanding deed of trust from Rice brothers to Jackson and had refused to execute the corrected deed until this outstanding Rice-Jackson deed of trust had been satisfied. He required this satisfaction as a condition upon which he would execute the new deed and it was upon this requirement that the defendant negligently permitted Jackson to satisfy the record without producing the evidence of the indebtedness therein secured for cancellation or properly accounting

for their absence, either of which would have operated
to validate the satisfaction and preserved the rights of
relator. But it may be said the execution of the new
and corrected deed of trust on May 10th by relator to
secure the indebtedness, notes of April 24th, cannot sup-
port the action as relator could have been compelled in
a court of equity to execute the corrected deed or such
court could have reformed the deed of April 24th in
which the error was made and make it conform to the
intention of the parties at the time, and therefore relator
did nothing, assumed no obligation and forfeited no
right on the faith and credit of the negligent act of the
defendant recorder. This is not true. Now, as the facts
then stood, relator had actual knowledge of the deed of
trust outstanding on the lands he had purchased and
could have enforced Jackson to satisfy the same before
correcting the deed of trust on his home place, and had
Jackson sued him in equity to reform the deed of trust
given by relator and wife to correct the error therein,
the relator could have prayed the court to decree Jack-
son to cause the release or satisfaction of such outstand-
ing deed of trust as a condition or price of its decree of
reformation as to his deed, and this the court would
have done upon equitable principles, of course. In this
view of the case, it appears that the relator being mis-
led by the negligence of the defendant recorder, was
induced to forfeit or forego his rights in that behalf
until after Jackson had disposed of the notes and cor-
rected mortgage given by relator and fled the country.
The result is both Jackson and the Rice brothers being
insolvent, the relator was without remedy except in this
action, and as his loss clearly resulted from the negli-
gent act of the defendant, the judgment will therefore be
reversed, and inasmuch as there are no further issues
in the case other than to ascertain the amount of the
recovery, the cause will be remanded with directions to
the learned trial judge to enter judgment for the relator

against the defendant in the sum of $2,500, the amount of the bond; that the court ascertain the amount of principal and interest due on the notes and deed of trust from Rice brothers to Jackson on the date of its alleged satisfaction, May 10, 1902, and such judgment be satisfied by the payment of that amount to relator and relator have and recover his costs and execution issue therefor. Inasmuch as relator might have paid off and discharged the Rice brothers' mortgage and thus preserved the lands purchased by him and covered therein from sale, on May 10, 1902, we understand the amount of that incumbrance, principal and interest at that date, to be the proper measure of recovery in this case. [See State ex rel. Phillips v. Green, 112 Mo. App. 108.] It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.