ADAMS et al. v. STATE.†

(Court of Civil Appeals of Texas. Dallas. April 6, 1912. Rehearing Denied April 27, 1912.)

1. INTOXICATING LIQUORS (§ 86*)—LICENSES —STATUTES.

Acts 31st Leg. (1st Ex. Sess.) c. 17, § 35, which took effect July 11, 1909, provides that after going into effect all liquor licensees shall have 60 days in which to obtain licenses under this act, the new licenses to be dated as of the date this act takes effect; and that during the 60 days the licensee shall have the right to pursue his business under and in accordance with the canceled license and the laws applicable thereto. A licensee, whose license did not expire until September 21, 1909, continued in business until 60 days after the passage of this act. Held, that the licensee and bondsmen could not set up, in order to defeat a suit on his bond, that the licensee was doing an illegal business, not intending to secure a license under the new act.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 89; Dec. Dig. § 86.*]

2. INTOXICATING LIQUORS (§ 86*)—LICENSES —BONDS—"QUIET ORDERLY HOUSE."

A quiet, orderly house, or place for the sale of liquors, within the condition of a bond providing that a liquor dealer shall maintain such a place, is one in which no music, loud or boisterous talking, yelling, or indecent, vulgar language is allowed, used, or practiced, or any other noise calculated to disturb or annoy any person residing or doing business in that vicinity.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 89; Dec. Dig. § 86.*

For other definitions, see Words and Phrases, vol. 7, p. 5889.]

3. INTOXICATING LIQUORS (§ 86*)—REGULA-TIONS—BONDS.

Where a liquor dealer, who gave a bond conditioned upon his keeping an open, quiet, and orderly house, or place for the sale of liquor, maintained a small inclosure behind his place of business, used for storing empty bottles and full customers, disturbances of the peace, committed in the inclosure, were a breach of the condition of the bond.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 89; Dec. Dig. § 86.*]

4. INTOXICATING LIQUORS (§ 88*)—LICENSES
—BONDS—ACTIONS—VARIANCE.

In an action on a liquor dealer's bond, the variance between the bond, which showed it was executed on September 7th, and the petition, which alleged it was executed on September 28th, is immaterial, and will not warrant the bond's exclusion.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 91–95; Dec. Dig. § 88.*]

5. INTOXICATING LIQUORS (§ 88*)—LICENSES
—BONDS—INTEREST.

Where a judgment was recovered on a liquor dealer's bond, conditioned upon his keeping a quiet and orderly house, the allowance of interest at 6 per cent. on the recovery was erroneous.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 91–95; Dec. Dig. § 88.*]

6. COSTS (§ 238*)—COSTS ON APPEAL.

In an action on a liquor dealer's bond, where interest was improperly allowed by the judgment, the defendant, who failed to call that error to the attention of the trial court, will be taxed with the costs of his appeal, although his assignment of error as to the interest is upheld.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 908–919; Dec. Dig. § 238.*]

Appeal from District Court, Limestone County; H. B. Daviss, Judge.

Suit by the State, for the use of Limestone County, against H. D. Adams and others, on a liquor dealer's bond. From a judgment for the State, defendants appeal. Affirmed.

Doyle & Jackson, of Groesbeck, and T. L. Camp, of Dallas, for appellants. Bradley & Herring and C. S. Bradley, all of Groesbeck, for the State.

RAINEY, C. J. This is a suit on a liquor dealer's bond brought by the state of Texas, for the use of Limestone county, to recover of H. D. Adams and his sureties penalties for the breach of his retail liquor dealer's bond on six different occasions. A trial resulted in a judgment in favor of the state for $3,000, and the appellants prosecute this appeal.

Adams procured from the state license to engage in the retail liquor business, which license was issued on September 21, 1908, to run one year from date thereof. He executed bond with the American Security Company of New York as surety. He entered upon the business and breached his bond on six different occasions, to wit, in January, February, March, August 15, August 26, and September 3, 1909.

[1] The first assignment of error is presented as fundamental. It reads: "The court erred in its charge to the jury, wherein he submitted as grounds of recovery the breaches of the liquor dealer's bond of Adams that are alleged to have occurred on August 15, 1909, August 26, 1909, and September 3, 1909, for the reasons that the liquor dealer's license, under and by virtue of which the defendant Adams carried on business, expired at midnight on July 11, 1909, and subsequent thereto the said Adams was illegally in business."

The contention is that Adams, during August and September, 1909, when said acts were committed was doing an illegal business; his license having been revoked by an act of the Thirty-First Legislature, c. 17, p. 293, commonly known as the Robertson-Fitzhugh Bill, which took effect at midnight July 11, 1909, and he, not having made, nor intending to make, any effort to secure license under said bill. It was also urged that it devolved upon the state to allege and prove that Adams at this time was not illegally in business. These issues are presented here for the first time; and, while not conceding that it is fundamental error, we have concluded to consider the assignment.

Section 35, c. 17, Acts 31st Legislature, p. 293, reads: "All laws and parts of laws in conflict with this act are hereby expressly repealed. Providing, all of the provisions relating to the sale of intoxicating liquors contained in any special charter granted by the Legislature to any city or town shall not be repealed by this act, but the same shall be cumulative thereof. Provided that as soon as this law goes into effect all licenses heretofore issued shall immediately cease and determine, but the holders of such licenses shall have until sixty days after this act takes effect in which to obtain licenses under this act, said licenses to be dated as of the date this act takes effect, and the tax collector shall give such licensee credit for the unearned portion of such canceled license as of the date this act takes effect; and provided, during said sixty days said licensee shall have the right to pursue his business under and in accordance with the canceled license and the laws applicable to the same, which for that purpose are hereby kept in force for said sixty days."

The license issued to Adams by virtue of the former law by its terms did not expire until September 21, 1909, so if the act of the Thirty-First Legislature had not intervened there would be no question as to his doing business at that period being legal. The said act provided, upon its going into effect, licenses then in existence should cease; but to prevent injustice and the confusion that the lawmakers evidently contemplated would naturally arise from the sudden changing of the law it also provided that the holders of licenses could do business for 60 days after the new law went into effect, in order that they might procure another permit. During that time, Adams continued the liquor business, and the state had the right to presume he was intending to comply with the Robertson-Fitzhugh law. If he was doing business without intending to comply with the

law, he committed a legal fraud; and we do not think he ought now to be heard to urge it in defense of this action.

[2] The evidence shows that Adams conducted a saloon in Batura, a small village in Limestone county. There was situated there in one store a restaurant, and the saloon, post office, and several residences close to the store, in which families lived, one residence situated about 40 yards and others nearer. Just in the rear of the saloon, and connected therewith, was a small inclosure, called a "bull pen," used for storing empty bottles, kegs, barrels, a urinal for his customers, and for storing those too freely imbibed with the intoxicants on sale. The condition of the bond, as provided by law, is that Adams would keep an open, quiet, and orderly house or place for the sale of liquors. A quiet house or place of business is one in which no music, loud or boisterous talking, yelling, or indecent or vulgar language is allowed, used, or practiced, or any other noise calculated to disturb or annoy any person residing or doing business in the vicinity of such house or place of business.

[3] All of the acts charged by the state were for the breach of said bond in violating the above provision of the law in not keeping a quiet and orderly house; and we think the evidence supports the verdict that such acts were committed. One or two of the acts were committed in the "bull pen," and the appellant contends that such acts do not fall within the provision, as the term "house," used in the statute, means the house wherein the business is conducted. We think it means any part of the premises on which the business is conducted or used in connection with carrying on the same; that the "bull pen" herein named was included, and the acts committed therein were infractions of the law, for which Adams was subjected to the penalties herein assessed.

[4] The court did not err in allowing the introduction of the bond in evidence, over the objection that it varied from the bond alleged, in that it was alleged to have been executed on September 21, 1908, when the bond showed it was executed on September 7, 1908. The bond was attached to the petition; and the variance between the description of it in the petition and the one offered in evidence was immaterial.

[5, 6] The court erred in allowing interest on the judgment rendered at 6 per cent. per annum, and to that extent the judgment is here reformed, so as to exclude said interest; but appellant will be taxed with the costs, as the attention of the trial court was not called to this error.

The judgment is affirmed.