THE STATE OF MISSOURI at the relation and to the
use of PETER H. HAYES, Respondent, v. W. J.
HAILER, FRANZ O. MOERSCHEL and S. UR-
BAN, Appellants.

Kansas City Court of Appeals, May 20, 1918.

DRAMSHOPS: Sureties on Bond: Liability for Personal Injuries. The
plaintiff, a newspaper reporter, was assaulted and injured by the
bar-keeper of a dramshop and thereafter sued the saloon-keeper
and his bondsman for damages. It was *held* that the relator, hav-
ing suffered a direct and personal injury from the positive and
intentional act on the part of the dramshop's agent and bartender,
in direct violation of the duty imposed by statute and guaranteed
by the bond, namely "to keep at all times an orderly house," is
entitled to recover on the dramshop-keeper's bond for a direct and
positive violation thereof.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,*
Judge.

AFFIRMED.

*C. C. Kelly* for appellants.

*Holmes Hall* and *G. W. Barnett* for respondent.

TRIMBLE, J.—This is an action in the name of the
State by relator on defendant Hailer's bond as a dram-
shop keeper, the defendant Moerschel and Urban being
sureties thereon. There was a verdict and judgment for
$150 and defendants have appealed.

The petition charges a breach of the bond on the part
of said Hailer, and seeks to recover damages accruing
to relator by reason of being injured on account of the
failure to keep an orderly house, in that said dramshop
keeper's bartender, Lopp, while engaged in his duties as
bartender and in serving drinks in the barroom proper
and in the adjacent rooms, alleged to be a part of the
saloon, violently and without provocation assaulted rela-

tor, Hayes, by seizing him by the throat and beating him in the face, cutting a gash over his eye and otherwise injuring him, and at the same time cursing and abusing him and applying to him vile and profane epithets; all being done while said Hayes was behaving himself in a peaceable and orderly manner and without having been requested to leave the saloon. The petition further alleged that said assault was committed in the presense of said Hailer but that he did not undertake to interfere with his said barkeeper in the latter's disorderly and inhuman conduct, and tacitly approved thereof and continued the said barkeeper in his employ although requested to disavow said disorderly acts and to discharge said barkeeper from his employ on account of said disorderly conduct and brutal outrage upon an inoffensive man.

There is no dispute over the fact that the assault was committed. Liability is denied on the ground that relator cannot sue the sureties on the dramshop bond for a violation thereof even though the relator be the party receiving direct, special and personal injury thereby. The defendants further claim that the assault and general disturbance arising therefrom took place either in the restaurant or kitchen attached to the saloon and not in the barroom proper and that the bondsmen are not liable for disorder therein. The evidence in relator's behalf amply tends to support his claim that the assult was begun in the barroom proper, the barkeeper commencing to beat relator in there and continuing to beat him after forcing him through the opening into the adjacent room. But as this was disputed, and as the trial court instructed the jury that, under the conceded facts, the adjacent rooms called the restaurant and kitchen were all a.part of the dramshop and covered by the bond, it will be necessary to pass upon the propriety of this instruction if the other contention of defendants is found to be unavailing.

The conceded facts with reference to the saloon and restaurant, the conduct and management of the business and the arrangement of the building in which it is housed, are as follows:

The saloon and restaurant had been run in connection and as one business enterprise for a great many years having been handed down to the present proprietor from his father. It was housed in a building which was seperate and apart from other buildings and fronted north on East Third Street. Across the entire front of the building was a large sign: "Hailer's Saloon and Restaurant." Partitions divided the ground flour into three rooms running north and south, the barroom proper being on the east side, the two others having tables therein at which lunches were eaten and drinks from the barroom were sold. Toward the rear or south end of the rooms were doorways in the partitions which were kept constantly open so as to afford free and open communication at all times between the barroom proper and the parts called restaurant and kitchen. At the rear or south end of the barroom was a toilet and at the south end of the restaurant portion a part was partitioned off into what is called the kitchen, but it also had tables therein the same as the part called restaurant. There was also an opening into it affording easy access thereto from the barroom and restaurant. Parties seated at tables were served with lunches, and also with drinks brought from the barroom. Said drinks were served by the barkeeper, *and he collected the money therefor at the tables* where they were served and drunk. In the restaurant room at the south end next to the kitchen was a lunch counter at which sandwiches could be obtained, and in the barroom proper was a smaller counter where they could also be had, though defendants' testimony conflicts with plaintiff's on this last point, namely, as to whether there was a lunch counter in the barroom proper. There is, however, no controversy over the fact that the barkeepers prepared drinks at the bar, took them into the restaurant room and kitchen, served them to the patrons seated at the tables and collected the money for such drinks *at the tables*. Patrons testified to this, and defendant Hailer's barkeeper testified that he was barkeeper for Mr. Hailer; that he considered it a part of his business to go into the restaurant or kitchen. "I was in

there to help take care of the place. I was interested in there because I was in Mr. Hailer's employment." One of the defendant sureties on the bond testified, "I have drank lots of times in the restaurant room," and it was conceded that the other surety would testify the same way. The first-mentioned surety also testified that he had "not drank in the back room called the kitchen on many days." He further said he might have, but he didn't think he ever sat at the table and drank; he was not in the habit of going in the kitchen. He didn't think he had ever had liquor served to him at the tables in the kitchen.

Relator was, at the time in question, a reporter for a paper in Sedalia, and was accompanying a number of government officials visiting the city that day. The party entered the barroom proper and relator asked defendant Hailer if they could have a table. The proprietor assented and led them through the opening into the part called kitchen and seated them at a table. They sat here for a few minutes during which time drinks were ordered and, according to the evidence in plaintiff's behalf, were brought from the bar to the table where the party sat, and they were paid for at the table. The barkeeper, Lopp, who committed the assault, denies that he served the drinks to this particular party, but says another of defendant Hailer's barkeepers did. After a round or so of drinks were thus served, some one suggested sandwiches, and relator, acting somewhat as entertainer for the visitors, went into the room where the bar was to order them. After they were served, it was found that there was one sandwich lacking, in order to provide one for each member of the party. Relator again went back into the barroom proper to get the additional sandwich. The barkeeper, Lopp, because of his dislike for relator and because the latter was in his way in carrying drinks into the room from the bar, became angered at relator and, seizing him by the throat, began raining blows upon his face and head, and, forcing him back from the barroom through the opening into the restaurant portion, continued to beat him, calling him vile epithets and say-

ing, "I don't like you any way." The party at the table sprang up and sought to interfere and for a time there was considerable disturbance. Most of the beating took place in the barroom proper, but the last few blows given relator were delivered near the table where the party sat. According to the evidence in plaintiff's favor the beating was stopped by one of the party seizing the bartender and pulling him off of relator. The visitors and others present described the beating as "brutal." After the trouble arose, defendant Hailer remarked to relator, "Get on out when he tells you to. Get on out when he tells you to" referring to his barkeeper. A friend took charge of relator who was bleeding and took him home in an automobile. Relator was not intoxicated and had done nothing out of the way or to provoke the attack. Before leaving, this friend said to defendant Hailer that it was the most brutal beating he had ever seen, and Hailer said, "come around to-morrow and we will fix it up." Thereupon the proprietor ordered everybody out not only of the room where the bar was but of all the rooms where there were tables, and closed up the entire place. The next day relator's friend saw Hailer and told him it was the most brutal assault he had ever seen and that he, Hailer, couldn't afford to keep a man like that in his employ; that he oughtn't to keep a man that would do a thing like that; it would give him trouble. Hailer refused to adopt the suggestion, saying that "Pete" (meaning relator) "had caused him trouble before."

The question to be determined is whether suit can be maintained at the relation of the one who has been directly and specially injured by the failure "to keep at all times an orderly house." Section 7196, Revised Statutes 1909, requiring a bond of a dramshop keeper before he can be licensed, says such bond shall be conditioned that he (1) "shall at all times keep an orderly house," (2) that he "will not sell, give away or otherwise dispose of, or suffer the same to be done about his premises, any intoxicating liquor in any quanity to any minor," (3) that he will not violate any of the provisions of the article on dramshops, (4) that he will pay all taxes on his

stock of liquors and all fines, penalties and forfeitures adjudged against him under the provisions of the article relating to dramshops.

The bond was in due and proper form and conditioned as the law directs.

No point is made that the fighting and assault, together with the accompanying disturbance, done and created by the dramshop keeper's bartender and permitted by the proprietor in his presence and place of business and while the same was being carried on, did not constitute a failure to keep an orderly house, and, for this reason, was not a breach of said bond. Defendants' contention is that no recovery of damages can be had nor suit maintained at relator's instance or for his benefit because he is not the proper party under the statute to maintain the suit. Another statute, section 7198, provides for a civil action by two or more reputable tax paying citizens, as relators, for the forfeiture of said bond and for the taxing of a penalty of not less than $100 to go to the school fund together with a reasonable attorney's fee. Another statute, section 7213, provides for the recovery of a penalty of $50 for selling liquor to any minor, said penalty to go to the parent, master or guardian of said minor; while still another statute, section 7223, provides for the recovery of a penalty of not less than $50 nor more than $500 for selling (after notice) to an habitual drunkard, such penalty to go to the wife. father, mother, brother, sister, child or guardian of such drunkard, and involving the forfeiture of the dramshop license. Each of said last named sections makes the act therein specified a misdemeanor punishable by fine.

The statute nowhere expressly says that damages may be recovered by anyone specially injured by the failure to keep at all times an orderly house, and for this reason defendants say this suit for damages cannot be maintained.

There is no question but that where a statute creates a new right and prescribes a remedy, the statutory remedy is exclusive; but in this instance the statute provides

for the giving of a bond conditioned, first, that the dram-shop keeper ''shall keep at all times an orderly house'' and then that he shall not sell to minors, nor to drunk-ards and shall pay all fines and forfeitures imposed for a violation of the dramshop law. The remedies provided by sections 7198, 7213 and 7223 do not relate to the re-covery of *damages* by one suffering a direct and special injury from an active breach of the bond in relation to keeping an orderly house at all times. In fact, the statu-tory remedies do not relate to *damages* at all, nor to a cause of action on the bond to compensate a person for injuries received through a breach thereof; they relate solely to the recovery of *penalties* wherein no pecuniary damages need be shown. No cause of action for *these* could exist aside from the statute; and the fact that reme-dies for them are provided does not exclude a cause of action for damages personally accruing from the posi-tive intentional act of the dramshop keeper, through his agent and bartender, constituting a violation of his boun-den duty to keep at all times an orderly house. The stat-ute requires of the dramshop keeper a bond for the faith-ful performance of his duty in this regard; and while it is silent as to the right to sue thereon for damages direct-ly and specially arising therefrom and as to who can exercise that right, yet there is nothing therein tending to exclude the exercise of such right. As to it the statute merely says nothing; and the remedies *expressly* provid-ed for are rights which could by no possibility come into existence unless affirmatively created by statute. But at common law the dramshop keeper is responsible for the assaults of his agents under the circumstances of this case, and the only effect of the bond as to such matters is to guarantee that the same will not occur. In other words, the statute having required a bond for the faith-ful performance of duty, and relator, as a peaceable, unoffending patron legally in the dramshop keeper's place of business, is entitled to an observance of that duty, and being personally and specially injured by the failure to perform that duty, has a cause of action on the bond. Being the party injured by the breach of the bond,

he is the real party in interest and, as relator, is entitled to have the suit maintained. [Section 1729, R. S. 1909.] Frequently, statutes provide for the giving of bonds, made payable to the State, for the performance of some duty or obligation concerning which it is not provided who may sue thereon, but "where there's a right, there's a remedy" and it has been held that one suffering a special injury from a breach of the bond and to whom the obligation is owed, may sue thereon. For instance, a recorder of deeds is required to give bond for the faithful performance of his duties and no provision is made as to who may sue thereon or under what circumstances suit may be brought. And yet a recorder was held liable on his bond for a breach thereof toward one to whom he owed that duty and who was specially injured by the breach thereof. [State ex rel. v. Green, 124 Mo. App. 80.] [See, also, Scott v. Missouri Pacific R. Co., 38 Mo. App. 523.] That a bond inures to the benefit of one entitled to the performance of the duty for which the bond is given, and can be sued on by such a one injured by the breach thereof, is held in Young v. Young, 52 N. E. 776; American Surety Co. v. Thorn-Holliwell Cement Co., 57 Pac. 237; People v. Cotteral, 115 Mich. 43; School District v. Livers, 147 Mo. 580; City of St. Louis v. Von Phul, 133 Mo. 561; Devers v. Howard, 144 Mo. 671.

In Squires v. Michigan Bonding Co., 138 N. W. (Mich.) 1062, it is held that a saloon keeper's bond, being for the benefit of the public and not strictly contractual in nature is to be construed according to the purpose, intent and meaning of the statute pursuant to which it is given, and not according to the strict rules applicable to private contracts of suretyship. Certain it is that if the action in the case at bar cannot be maintained, then individual citizens or members of the body politic have no protection by reason of said bond. If a person is beaten up and abused by the saloon keeper or his agents while in the saloon, then the only redress afforded by the bond is to have two reputable taxpaying citizens to bring suit for the forfeiture thereof, provided they will volunteer to run the risk. We do not think this is

the intent and meaning of the statute nor the limit of its purpose in requiring the saloon keeper to give security against the happening of such occurrences. The business engaged in is of a character likely to result in such things, and the saloon keeper gives a bond that he will not permit or suffer them to be done, and his sureties are well aware of the nature of the business they agree to guarantee shall be conducted in an orderly manner, and for a saloon keeper, through his agent and bartender, to beat up an unoffending patron of his place of business and then go free of all liability on the bond because it does not cover such matters is to restrict within too narrow limits the language of the bond and the object and intention of the statute requiring one to be given. The remedies expressly provided by other statutes relate to police powers for the protection of the *public* and the *public morals* where no pecuniary rights of an individual are *specially* affected. Hence such remedies do not exclude by implication an individual remedy to redress an individual wrong. The two classes of remedies are wholly separate and distinct.

It is next contended that the obligation of the bond did not cover the rooms used in connection with the barroom denominated restaurant and kitchen. The conceded facts show that the restaurant room, the kitchen and the barroom, were all used in connection with each other wherein to sell drinks and carry on the business of retailing intoxicating liquors. The whole formed and was conducted as one business, so that, the restaurant room, the kitchen and barroom, in reality, constituted the premises and a part of the saloon, each being a mere department of the other. And the fact that there was a front door to each of said rooms numbered respectively 526, 528 and 530 and the license called for the location of the saloon at 530 did not make them separate. The business, as operated, was that of a saloon and restaurant combined, intermingled and mutually interchangeable, *and the sureties knew this when they signed the bond.* There is no doubt but that the bond and the obligation thereof should not be stretched to

cover a "place" or "location" different from that for which it was given and the license was granted. But by the very terms of section 7196, the bond covers the dramshop keeper's "house" and "premises." So that where the entire premises are used as a saloon and for the sale of intoxicating liquor under the license granted, the bond should and does cover the premises so used and not merely the compartment where the liquors are stored or where the sale thereof is made to standing customers at a counter called a bar, when other sales are made, in an adjoining and openly connected compartment, to other customers seated at tables. The saloon keeper in this case had but one license and if the open and adjacent rooms were not a part of his saloon, then he was violating the law in selling liquors therein. He himself recognized it as all one place for when he realized the possible consequences arising from what his agent had done, he ordered everybody out of all rooms and closed them up. In Horan v. Travis Co., 27 Tex. 266, a bond was held to cover premises much more separated than the rooms here involved. See, also, Adams v. State, 146 S. W. 1086, where it is held that a disturbance occurring in a small inclosure behind the saloon-keeper's place of business, but under his charge and control, was covered by the bond. In Whitcomb v. State, 21 S. W. 976, it was held that the bond covered an arbor located back of the saloon and separated from it by an alley, the arbor containing tables at which patrons were served with drinks from the saloon.

We are of the opinion that relator, having suffered a direct and personal injury from the positive and intentional act on the part of the dramshop keeper's agent and bartender, in direct violation of the duty imposed by statute and guaranteed by the bond, namely "to keep at all times an orderly house," is entitled to recover on the dramshop keeper's bond for such direct and positive violation thereof, and hence affirm the judgment. All concur.